BETTY JO HALL, APPELLANT, V. HERBERT RICHARD HALL,
APPELLEE.

132 N. W. 2d 217

Filed December 31, 1964. No. 35735.

Donald R. Grant, Kier, Cobb & Luedtke, and Janice L. Gradwohl, for appellant.

Ginsburg, Rosenberg & Ginsburg and Marti, O'Gara & Dalton, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, BOSLAUGH, and BROWER, JJ., and DIERKS, District Judge.

MESSMORE, J.

Betty Jo Hall, plaintiff, brought this action in the district court for Lancaster County against Herbert Richard Hall, defendant, to obtain an absolute divorce, the custody of a 9-year-old daughter of the parties, child support, alimony, costs, and attorneys' fees.

A motion was filed by the defendant that the issues in this case be transferred to the separate juvenile court of Lancaster County. By order of the district court, the case was transferred to the separate juvenile court of Lancaster County as provided for by law.

The trial judge of the separate juvenile court made findings as follows: That the plaintiff and defendant were married on May 29, 1953; that one child was born to this marriage, Courtney Lynne Hall, on August 11, 1954; that the care, custody, control, and support of this child were the issues in this case; that the defendant had been guilty of extreme cruelty to the plaintiff to such an extent that the legitimate objects of matrimony had been defeated and destroyed which entitled the plaintiff to an absolute divorce; that neither the plaintiff nor the defendant was a proper person to have the care, control, and custody of the minor child, which care, control, and custody of the child should be awarded to Mr. and Mrs. Mark M. Baldwin of Omaha, Nebraska, an uncle and aunt of the child, who offered to take such custody; that Mr. and Mrs. Mark M. Baldwin were fit and proper persons to have the care and custody of Courtney Lynne Hall, a minor child; that it was in the best interests of the minor child that her custody be given to Mr. and Mrs. Mark M. Baldwin subject to reasonable rights of visitation by the plaintiff and the defendant; that child support should be paid by the defendant in the amount of $100 a month commencing forthwith until the child reaches 21 years of age, dies, or until further order of the

court; that the personal clothing and personal effects of the plaintiff should be awarded to her and the personal clothing and personal effects, including insurance policies of the defendant, should be awarded to him; that the household furniture and furnishings should be awarded to the plaintiff; that the 1959 Ford automobile should be awarded to the defendant subject to any encumbrance against the same; that the described real estate owned by the parties should be sold and, after paying the balance due on the first mortgage at the First Federal Savings and Loan Association and the expenses of the sale, the balance should be divided equally between the parties as a division of property and alimony; that any lien resulting from this proceeding should be released in order that the property might be sold; and that the defendant should pay the costs of the action and reasonable attorneys' fees in the amount of $1,200. The decree was entered in accordance with the above findings.

The plaintiff filed a motion for new trial which was overruled. The plaintiff appealed.

The plaintiff's petition set forth certain acts of extreme cruelty on the part of the defendant to the plaintiff which embarrassed and humiliated the plaintiff to the extent of destroying the objects and purposes of matrimony, and particularly this marriage relationship; alleged that the defendant was employed by the Goodyear Tire and Rubber Company as an engineer and earned in excess of $600 a month, and that the parties had accumulated certain real estate; and further alleged the birth of the minor child of the parties. The plaintiff prayed for an absolute divorce from the defendant, the custody of the minor child of the parties, reserving reasonable rights of visitation to the defendant, and for an award of child support, alimony, costs, and attorneys' fees.

The defendant's answer admitted the residence of the parties, the date of their marriage, and the birth of the

minor child of the parties; generally denied all other allegations of the plaintiff's petition; specifically alleged that the plaintiff was not a fit and proper person to have the care and custody of the minor child of the parties; and prayed for a dismissal of the plaintiff's petition and that the care and custody of the minor child be vested in the defendant.

The plaintiff has set forth many assignments of error, in substance as follows: That the trial court erred in finding that the plaintiff was not a fit and proper person to have the care, control, and custody of Courtney Lynne Hall, minor child of the parties; in failing to award the home of the parties to the plaintiff; in failing to require the defendant to pay the balance due on the mortgage on the home of the parties, which was a lien against such home; and in receiving evidence which was too remote in time, hearsay, incompetent, irrelevant, and immaterial to the issues in this case.

There are certain rules of law that are applicable to a determination of this appeal.

In an appeal to this court in a divorce action the cause is tried de novo. See Waldbaum v. Waldbaum, 171 Neb. 625, 107 N. W. 2d 407.

In a divorce suit in which the custody of a minor child is involved, the rule is that the custody of the child is to be determined by the best interests of the child, with due regard for the superior rights of fit, proper, and suitable parents. The care, custody, and control of a child of tender years is almost uniformly awarded to the mother if she is a fit and suitable person to have its custody. See Campbell v. Campbell, 156 Neb. 155, 55 N. W. 2d 347.

Where in an action for divorce both parents are found to be unfit or unsuitable to have the care and legal custody of the minor child of the parties, the welfare and best interest of the child will constitute the sole consideration in determining the right of custody. Under the provisions of section 43-236, R. R. S. 1943, where the

parents of a minor child are unfit or unsuitable to have its custody, the separate juvenile court may properly place its legal custody in the chief juvenile probation officer on such terms and conditions as the court may prescribe. See Beck v. Beck, 175 Neb. 108, 120 N. W. 2d 585.

In a case where the fixing of the custody of a minor child is concerned, the wishes of the child are not controlling, but if the child has reached sufficient age and has the ability to express an intelligent preference, such an expression is entitled to consideration. See Waldbaum v. Waldbaum, *supra.*

The record discloses that the plaintiff and the defendant were married in Lincoln, Nebraska, on May 29, 1953. One child was born to this marriage on August 11, 1954, and named Courtney Lynne Hall, hereafter referred to as Courtney. During the marriage the parties accumulated real estate at 1834 North Sixty-seventh Street in Lincoln. The defendant is a project engineer employed by the Goodyear Tire & Rubber Company, and his income is about $700 a month. The plaintiff was 32 years of age and the defendant 42 years of age at the time of trial.

The evidence is replete with facts which show that the defendant drinks intoxicating liquor to excess; stays away from home and when he does come home is in a drunken condition and abusive to the plaintiff; that when he drinks he becomes boisterous, loud, uses filthy language, makes himself obnoxious, and embarrasses the plaintiff and others; and that such condition has continued during the 10 years of the marriage of the parties. There is no question but that the plaintiff was entitled to an absolute divorce from the defendant.

This was the second marriage of the plaintiff and the first marriage of the defendant. The plaintiff had been previously married to Marvin E. Copple. Two children were born to this marriage, Nancy Lee Copple and Steven E. Copple. The first marriage was dissolved

in 1951. Nancy and Steven remained living with their mother, the plaintiff, until 1959, at which time they commenced living with their father. At that time Nancy was 12 years of age and Steven 9 years of age.

The principal issues in this case relate to the care, control, and custody of Courtney, the minor child of the parties, and the sufficiency of the alimony awarded to the plaintiff.

The evidence in behalf of the plaintiff involving the issue of the custody of Courtney discloses that the principal of an elementary school testified that she had been acquainted with Courtney during all of her school years; that Courtney had always been a good student with average or above grades; and that she had noticed that Courtney's clothing was always clean and neat and her hair combed.

The plaintiff's mother testified to the quality and wholesomeness of the meals served by the plaintiff, the neat and clean appearance of the home, and a like neat and clean appearance of Courtney.

Another witness testified that she had never seen the plaintiff behave in any other manner than that of a lady; that the plaintiff's home was clean, and a normal family home with children; that the plaintiff was a good housekeeper, prepared good meals for the family, and did much sewing for herself and Courtney; and that the plaintiff and Courtney had a normal affectionate relationship as a mother and daughter.

There is much evidence given by witnesses for the plaintiff who are friends and acquaintances of hers which corroborated the testimony relating to the plaintiff being a very good housekeeper, having a clean home, as to her good conduct, that the plaintiff's treatment of Courtney has been good, that the plaintiff always took pride in her home, and that the relationship between the plaintiff, Courtney, and the other children was good.

Courtney testified that her mother was good to her; that if her parents were separated, she wanted to live

with her mother; and that her mother did spank her if she needed it. Courtney further testified that the defendant visited her every Saturday, which she thought was about the right amount of time, and that she agreed with her mother with reference to this matter.

The plaintiff testified that she did drink, and at times got "high," but not very often.

A witness testified that he had known the Halls for the last 5 years and had been a neighbor to them. His testimony related to neighborhood parties which the Halls had attended and where drinking was going on. He testified that sometimes these parties would last until 3 or 4 o'clock in the morning, and that the plaintiff drank her share of intoxicating liquor.

A friend of the Halls testified that she had known them ever since they moved into the neighborhood; that the Halls had attended two parties in her home and the plaintiff "drank right along with the rest of them"; and that the plaintiff was pretty well "looped" at one of the parties and had difficulty in keeping her elbow on the table.

Sumner E. Copple, the grandfather of Nancy and Steven Copple, testified that he and his wife had frequent contact with the plaintiff, the defendant, Nancy, Steven, and Courtney until the time that Nancy and Steven went to live with their father in 1959; that on many weekends he and his wife took care of the children; that when Courtney was a baby and still in diapers, on several occasions his wife called his attention to Courtney's condition when her diapers were changed; that there were sores on her buttocks much worse than an ordinary diaper rash; and that at times there were black marks on her back and buttocks, and welts and skin breaks extending from her buttocks to her neck. He further testified to seeing black marks on Steven once or twice a month, and similar marks on Nancy; that the plaintiff usually slapped Courtney when she was about 2 years of age if she spilled any

food; that he had seen the plaintiff strike Steven lots of times, either on the face, the back, or the top of his head; and that in March 1959, he talked to the plaintiff about the manner in which she treated the children and her response was that she should not have done it. He further testified that in 1959 Steven and Nancy came into the custody of their father and he had no grandchildren at the Hall home thereafter.

Mrs. Sumner E. Copple, the grandmother of Nancy and Steven Copple, testified that she babysat with Nancy, Steven, and Courtney on occasions once or twice a week. She told of Courtney's skin condition which she noticed when she changed her diapers, and testified that it was a common thing to see bruises on Courtney's back, shoulders, buttocks, and sometimes on her arms; and that she observed bruises, lacerations, and some abrasions on Steven. She related certain instances disclosing what she believed to be hard and unusual discipline meted out by the plaintiff to the children. She further testified that she had never seen the plaintiff hug or kiss any of the children; and that the plaintiff was always impatient and intolerant.

The defendant testified that he and the plaintiff owned the home they lived in; that he drinks too much, but not too frequently; that the plaintiff drinks and at times he had seen her drunk; that one time the plaintiff drank so many martinis that when her meal was served she was unable to eat it; that on another occasion, after drinking at the Esquire Club, the plaintiff had to be awakened and he had to escort her home; and that on another occasion the plaintiff became angry with him because he was drinking nothing but coffee. He described the way in which the plaintiff disciplined the children and testified that the plaintiff would start to give them a verbal reprimand and before she was through she would be so worked up that she would start flailing away, and that was the way she was with all of the children; and that such discipline could happen every

day or every couple of weeks, or every other week, depending upon the plaintiff's attitude and how she felt at the time. He then recited an incident relating to the plaintiff's discipline of Nancy which he thought was unmerciful and not as discipline should be given a child. He further testified that he saw the plaintiff slap Courtney and knock her out of a kitchen chair when Courtney was 4 years old; and that the plaintiff used a bowling shoe and a belt to whip the children.

Nancy Lee Copple, the 16-year-old daughter of the plaintiff, testified that she was Steven's sister and Courtney's half-sister; that she had lived with the plaintiff until she was 12 years old; that when she was living with her mother, Courtney slept with her in her room; that on numerous occasions she or one of the other children were disciplined by the plaintiff when the plaintiff would use a bowling shoe, holding the toe of the shoe and striking with the heel; and that the plaintiff used the shoe on all of the children, striking them over the back, the head, the shoulders, the legs and arms, and anywhere she could come in contact with the person of the children. She also testified that the plaintiff used a belt on all three of the children, and a board which she kept in the broom closet; that the plaintiff never used the board on this witness, but she had seen the plaintiff use it on Steven and Courtney; that the plaintiff would strike Courtney with her fist on Courtney's back, shoulders, or head, whichever happened to come in contact with the plaintiff; that the plaintiff would become extremely excited and use her fist, the bowling shoe, a belt, or a board on the children; that this discipline by the plaintiff would occur when the children would spill milk; and that she hated her mother, for the reason that her mother showed no affection for her, for Steven, or for Courtney.

The defendant's mother, a retired schoolteacher, testified that she spent considerable time with the Halls during the summer and on weekends prior to her retirement, and often babysat with Courtney after Steven

and Nancy no longer lived in the Hall home. She recalled an occurrence when the plaintiff lost her temper, grabbed a shoe off the kitchen floor, followed Courtney down the hall, and struck her five or six times across the shoulders with the shoe. She testified that Courtney was 6 or 7 years old at that time; and that the plaintiff would slap the children if they spilled anything on the kitchen floor or at the table.

There is no question but that Mr. and Mrs. Mark M. Baldwin of Omaha, Nebraska, bear a good reputation, have good accommodations for children in their home, are church-going people, have one daughter 19 years of age enrolled in Omaha University and another 14 years of age in junior high school, and would take Courtney into their home.

The plaintiff was recalled on redirect examination and testified that she did hold Courtney on her lap and kiss her and hug her because she was a very lovable child; that she had been a room mother every year that her children were in school; that she sponsored the Campfire Girls when Courtney was a member; and that she took the children swimming every Wednesday. She denied knocking Courtney off of a chair onto the floor. She said that she did use a stick or a paddle to strike the children on occasions as a matter of discipline and that she probably did use a bowling shoe on three or four occasions; that she had observed no abrasions or broken skin on the children; and that she did have trouble with diaper rash which affected all of her children, but secured medication which relieved this situation. She denied striking Courtney on the ear when she had an' earache, and denied and refuted the evidence of the witnesses for the defendant and the defendant and his mother relating to the discipline of the children as being too severe.

The testimony of the Copple family relates to occurrences prior to the spring of 1959, or 4 years prior to the time this case was commenced.

There are many pictures in evidence showing the plaintiff with Nancy, Steven, and Courtney together, and with Courtney alone at different places; pictures of the plaintiff and the defendant with the children; a picture of a dog of Courtney's; and a picture of a tea party she had with a playmate. These pictures clearly indicate the love and affection manifested by this plaintiff for Courtney.

The following are also applicable to the instant case.

In Young v. Young, 166 Neb. 532, 89 N. W. 2d 763, custody of the children was given to the welfare department of Lincoln County by the trial court. It appears that there was evidence that the mother drank alcoholic liquor, primarily beer. There was also evidence that on occasions she had possibly consumed more than ordinarily would be proper and desirable. There was evidence that on one or possibly two occasions a party of friends, who had brought their own liquor, became noisy while in her home. This court said: "While we do not approve such conduct on her part, however, we do not think it was of such a character that it completely destroyed her right to raise her children." The custody of the four children was awarded to the mother. See, also, Beck v. Beck, *supra*.

In the instant case the plaintiff has been employed at different times during the period of her marriage to the defendant. The last time the plaintiff started to work was in the spring of 1959, and she has been employed since that time. During the times that she has been employed she has had a good friend, a neighbor, who is a good housekeeper and a person of good reputation, who babysat with Courtney.

There is nothing in the record that attacks the plaintiff's morality. It is true that at times she has been to different clubs with a group of persons, her friends, and has had a few drinks of intoxicating liquor. We do not condone this action on her part.

We direct that the legal custody of the minor child in

the instant case be placed in the chief juvenile probation officer of Lancaster County, with instructions to leave her physical custody with the mother, Betty, Jo Hall, under the supervision of such probation officer, during such time as she shall properly care for the child under an environment that is not inimical to the child's best interests and welfare. If and when Betty Jo Hall fails in her obligation to act in accordance with the best interests and welfare of the child, the matter shall be called to the attention of the court for such further disposition as the court deems necessary and proper under the law and the evidence.

As to the question of alimony, in Abel v. Abel, 168 Neb. 488, 96 N. W. 2d 276, we said: "The court in determining the amount of alimony or in making a division of property in a divorce case will consider the age of the parties, their earning ability, the duration of and the conduct of each during the marriage, their station in life, the circumstances and necessities of each, the physical condition of each, the property owned by them and whether or not it was acquired by their joint efforts, and any other pertinent facts."

The defendant borrowed $2,000 from his mother to make a downpayment on the real estate of the parties. The total price of the property was $12,500, and the indebtedness against the property was $6,426.61 as of September 1963. At the time of trial, the defendant was making payments of $98.50 a month on this real estate.

The only item of property in the instant case of significant value is the equity in the real estate, which appears to be the upper amount that can be considered in making a division of the property. There is evidence in the record that the property is of a higher value than it was at the time it was purchased by the parties. The record also shows that the net salary of the defendant for the first 9 months of 1963 amounted to $4,869.80, or an average monthly salary of $541.08.

It is apparent that according to the trial court's judg-

ment the plaintiff receives 50 percent of the proceeds of the sale of the property, after discharging the indebtedness due a building and loan association and other matters of indebtedness which the defendant is required to pay, as heretofore shown.

The judgment of the trial court should be affirmed in all respects, except the decree of the trial court is hereby modified with reference to the custody of the minor child.

AFFIRMED AS MODIFIED.

DIERKS, District Judge, not participating.