JUANITA I. BLOME, APPELLEE AND CROSS-APPELLANT, V. HERMAN G. BLOME, SR., APPELLANT AND CROSS-APPELLEE, LOUIS E. BLOME, APPELLEE AND CROSS-APPELLEE.

271 N. W. 2d 466

Filed November 15, 1978. No. 41694.

Holtorf, Hansen, Kovarik & Nuttleman, Byron J. Brogan, and James W. Ellison, for appellant.

Richard A. Douglas, for appellee.

Heard before SPENCER, C. J., PRO TEM., BOSLAUGH,

McCown, Clinton, Brodkey, and White, JJ., and Kuns, Retired District Judge.

McCown, J.

This is a proceeding for dissolution of marriage. The District Court dissolved the marriage and made a property division. The husband has appealed and the wife has cross-appealed.

The petitioner, Juanita I. Blome, and the respondent, Herman G. Blome, Sr., were married in Pasadena, California, on May 9, 1970. At the time of the marriage the wife was 52 years of age and the husband was 77. Both had been married before and had grown children. At the time of the marriage the wife was living in California and was employed in taking care of an elderly couple. The husband was a farmer and rancher and lived in Morrill County, Nebraska. The parties lived in the wife's residence in California for a short while and then came to Nebraska.

Shortly after returning to Nebraska the parties purchased a residence in Gering, Nebraska, for $18,500, which was appraised at $30,000 at time of trial. For approximately 3 years the wife resided in the Gering residence and the husband lived during the week in another house which he owned in Bridgeport, Nebraska, approximately 30 miles away. The wife visited him in Bridgeport at least once a week and prepared and took meals to him, and he came to the Gering house on weekends. Until early 1974 the husband was active in the cattle business on the Bridgeport farmland in which he held a life interest. He had approximately 100 to 125 head of cattle on hand at all times. After he sold the cattle in early 1974 the parties lived together in Gering during the remainder of the marriage. The wife testified that the husband required extra care during this period of the marriage, and the husband conceded that she worked hard at all times.

At the time of the marriage the wife had a few hundred dollars in a checking account, some furniture, an automobile, and she owned a small house which was later sold for $2,000. She also received approximately $2,000 from an estate during the course of the marriage.

The evidence as to the husband's holdings at the time of the marriage is unclear and confusing. He had an interest in approximately 900 acres of farmland in Morrill County, Nebraska. Sometime in the 1960's the husband conveyed the farmland to his children and, according to his testimony, he retained a life estate in the property. On June 1, 1972, his children executed a deed conveying a life interest in the Morrill County farmland to him. During the period of the marriage the husband was entitled to all the current income from the farmland. His children sold one tract of the farmland in 1975 for $30,000, and the remainder for $190,000 in 1976. The record does not disclose the disposition made of the husband's life estate.

At the inception of the marriage the husband also owned a house in Bridgeport, Nebraska, worth $7,000, which he had transferred to a granddaughter prior to the trial here. The husband also testified that he had some stocks and bonds at the time of the marriage, but he could not identify the kinds or amounts.

The husband also testified that he made certain loans prior to the marriage which had been paid off during the marriage. The details and the allocation of amounts paid to periods of time before and after the inception of the marriage were uncertain and confusing.

During the marriage the parties acquired a substantial amount of stocks and bonds. At the time of trial the value of the securities acquired by the parties during the marriage was approximately $97,000. The husband transferred a substantial portion of

these securities into joint tenancy between himself and his son, Louis Blome, in July 1975. The son was made a party to this action.

The evidence also established that the husband had instituted several lawsuits stemming from activities conducted by him during the period of the marriage. In one of these the husband had won a summary judgment for $16,366.39 a few months before the trial here. Other suits involved claims of $2,578.25 and $12,600 by the husband against other parties. There were also suits and counterclaims pending against the husband on which his potential liability was substantially the same amount.

The parties also owned a station wagon valued at $1,900 and a pickup truck valued at $800, and the husband had savings and loan accounts in the sums of $2,479.57 and $3,483.16.

The petition for dissolution of marriage was filed on November 18, 1976, in the District Court for Scotts Bluff County. Trial was held in July 1977, and on August 12, 1977, the District Court entered its decree. The decree awarded the wife the residence in Gering, and the stock held in her individual name valued at $3,730, together with additional stocks and securities valued at $21,707.50. She also received the station wagon, household goods in her possession, and her own personal effects and bank accounts. The husband was awarded all remaining stocks and bonds, which had a value of approximately $72,000, all household goods in his possession, as well as his personal effects and bank accounts, and any remaining personal property. The court found that the stocks and bonds held in joint tenancy by the husband and son were held in constructive trust for the husband and wife, and directed the son to make transfers in accordance with the decree.

Both the husband and wife filed motions for new trial, which were overruled. The husband has ap-

pealed and the wife has cross-appealed. The son has not appealed.

It is the contention of the husband on appeal that all the money used to buy stocks and bonds came from assets owned by the husband prior to the marriage, and that the stocks and bonds were not properly marital property. The wife contends that the funds to purchase the stocks and bonds came from the husband's cattle operations and from rentals and other income derived from the life estate in the farmland, and that such stocks and bonds were part of the marital property. On her cross-appeal the wife asserts that the husband's interest in the farm real estate was something more than a life estate; that the value of the farm property increased during the marriage from $110,000 to $220,000; and that the wife is entitled to the benefit of a portion of that increased value. The wife also asserted in her motion for a new trial that the corporate debtor whose securities constituted the major portion of the securities assigned to her in the decree had instituted bankruptcy proceedings and therefore the decree should be revised.

The evidence as to the source of funds used for the purchase of stocks and bonds during the marriage is in direct conflict. Basically, the husband's evidence rests on the fact that the income tax returns for the years 1970 through 1974 show that the farming operation had a net loss of a few hundred dollars each year from 1970 through 1972, and showed a net profit of only $1,805.23 for 1973, and $3,800.48 for 1974. Apparently no returns were filed for 1975 or 1976. The argument is that the source of funds for the purchase of stocks and bonds must, therefore, have come from other property owned by the husband prior to marriage. Evidence as to the nature and extent of that property is inconclusive at best.

In addition, the husband's own testimony contradicted his reliance on the income tax returns. The

husband testified that during the years 1970 to 1974 he conducted an active cattle raising operation and maintained 100 to 125 cattle on hand at all times until early 1974, when he sold all his cattle. The income tax returns show no cattle sold in 1972 or 1973 and show only one cow sold in 1974.

The wife's evidence, on the other hand, was that there was substantial income during the marriage, both from the cattle operation and from rentals and other income sources. Her evidence tends to show that income for the years 1973 and 1974 was approximately $40,000 per year.

The trial court found that all the stocks and bonds were acquired from funds accumulated during the course of the marriage and that there was insufficient evidence to support the husband's contentions. This court has consistently held that in an appeal from a decree of dissolution of marriage, this court, in reaching its own findings, will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. Hanisch v. Hanisch, 195 Neb. 204, 237 N. W. 2d 407. The evidence is more than sufficient to support the determination of the trial court.

The husband also contends that under the circumstances here the property division was inequitable and the award to the wife was excessive. The rules for determining a division of property in an action for dissolution of marriage provide no mathematical formula by which such awards can be precisely determined. They are to be determined by the facts in each case and the courts will consider all pertinent facts in reaching an award that is just and equitable. Hanisch v. Hanisch, *supra*. The division of property here is not inequitable and is within previously approved general standards.

This court is not inclined to disturb the division of property made by the trial court unless it is patently

unfair on the record. Tavlin v. Tavlin, 194 Neb. 98, 230 N. W. 2d 108. The division of property made by the trial court was not patently unfair and is supported by the evidence.

The issues raised in the wife's cross-appeal were also decided by the trial court on the basis of conflicting evidence. The trial court accepted one version of the facts and the determination of the trial court was not patently unfair.

The judgment is affirmed. The attorney for the plaintiff-appellee is allowed a fee of $750 for services in this court.

AFFIRMED.