AUGUSTINE RHODES, APPELLEE AND CROSS-APPELLANT, V.
PAUL EVERETT RHODES, APPELLANT
AND CROSS-APPELLEE.

314 N.W.2d 271

Filed January 8, 1982. No. 43741.

Paul Rhodes, pro se.

George Gus Rhodes for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

Per Curiam.

This is an appeal in a proceeding for the dissolution of a marriage. The trial court dissolved the marriage and divided the property of the parties. The respondent has appealed. His 53 assignments of error relate principally to the division of property which was made and to two interlocutory orders finding the respondent to be in contempt.

The parties were married in 1951. They have three children, all of whom are of age. At the time of the marriage the respondent was a lawyer practicing in Morrill County, Nebraska. The petitioner was the county superintendent of schools for Morrill County.

At the time of the marriage the respondent had a law office and some livestock and farm machinery. He owned a residence and a quarter section of land, both of which were mortgaged. The petitioner owned some home furnishings, a new automobile, an 80-acre tract of land, and had $10,000 in savings. During the course of the marriage the parties accumulated other property, including farmland and residential rental property. During the marriage the petitioner inherited approximately $50,000 from her parents and received approximately $2,500 from the teachers' retirement fund.

The trial court found, and the record shows, that until about 1960 the parties jointly operated, managed, and contributed funds to the family farming operation. In 1959 the respondent became involved in personal litigation and devoted most of his time to his private legal affairs. He was incarcerated in the Nebraska Penal Complex in 1961 and 1962 and disbarred in 1964.

After 1960 the petitioner assumed control and management of the farming operation and operated it with the assistance of the children and hired help and with no substantial financial contribution or assistance from the respondent. She also was responsible for all the domestic activities of the household, including the care of the children.

After 1960 the petitioner assumed sole responsibility

for the money borrowed to carry on the farming operation and reimbursed the respondent for cattle which he purchased. She assumed the responsibility for the maintenance and upkeep of three residential rental properties the parties had acquired, and the responsibility for the day-to-day financial management, including paying the hired help, keeping financial records of the farming operations and the rental property, and paying the debts of the parties.

The trial court found, and the record shows, that shares of stock, most of which had been purchased with funds the petitioner had received from her parents or the teachers' retirement fund, were not marital property. These securities and 13 U.S. savings bonds which the petitioner had received from her mother were awarded to the petitioner.

A 320-acre tract of land, known as the "home place," and a 960-acre tract, known as the "Dugger place," were awarded to the petitioner subject to the mortgage in the amount of $2,380 on the home place. The trial court found that the value of each tract was $200,000. The petitioner was awarded personal property having a value of approximately $64,000 as found by the trial court.

The home place consisted of the 160-acre tract owned by the respondent at the time of the marriage, the 80-acre tract owned by the petitioner at the time of the marriage, and an 80-acre tract the petitioner purchased from her brother. The respondent had but little equity in the 160-acre tract which had been purchased at a tax sale and was mortgaged. The record shows the petitioner made substantial contributions to the mortgage payments and the improvement of the land and buildings on the home place. The Dugger place was purchased during the marriage.

The respondent was awarded the residential rental property in Bridgeport, Nebraska, and the building in which he maintained his office. The real estate awarded to the respondent was valued at $70,000 by the trial

court. The respondent was awarded 1,000 shares of stock and other personal property consisting of cash, silver, automobiles, household and office furniture, law books, and miscellaneous items having a total value of approximately $66,600 as found by the trial court.

The petitioner was ordered to pay the respondent $50,000 on July 31, 1981, as a part of the property division. The petitioner was allowed an attorney fee of $5,000 to be paid by the respondent.

The property division made by the trial court resulted in the petitioner receiving approximately two-thirds of the marital property and the respondent one-third.

The respondent produced deeds which purported to show that the petitioner had conveyed all of her interest in the land to him. The petitioner denied executing the deeds, and the trial court found them to be of no force and effect. In an action for dissolution of marriage, a court may divide property between the parties in accordance with the equities of the situation, irrespective of how legal title is held. *Cozette v. Cozette*, 196 Neb. 780, 784, 246 N.W.2d 473 (1976).

A division of property must take into consideration the circumstances of the parties, the duration of the marriage, contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities. *Chrisp v. Chrisp*, 207 Neb. 348, 299 N.W.2d 162 (1980).

The record is replete with evidence that, for nearly 20 years, the petitioner was responsible for the maintenance and improvement of these parcels of land; that the petitioner, the children, and the hired help, who were paid by the petitioner, did the actual farmwork, in many cases despite the tender ages of the children and despite the poor health of the petitioner; that, in addition, they farmed property titled in the names of the respondent's parents; that the petitioner maintained the residential rental units in Bridgeport; that during this time she was almost solely responsible for the care

of the three children; and that she interrupted her personal professional career to care for the children and carry on the farming operations.

The circumstances of the parties and the contributions to the marriage made by each party justify the division of property which was made in this case.

By cross-appeal, the petitioner contends that the share of the property awarded to the respondent was excessive. For the reasons previously stated, we believe the division of property between the parties was fair and equitable and should be affirmed.

The remaining issues relate to the orders finding the respondent to be in contempt.

The first contempt consisted of the recording of a deed after the respondent had been specifically ordered by the court not to do so. The second contempt consisted of the violation of an order to not disturb the peace of the petitioner.

As to the second contempt, the respondent contends he was not notified of the charges against him nor given an opportunity to defend because no formal accusation was filed.

A party to an action who fails to obey an order of the court, made for the benefit of the opposing party, is, ordinarily, guilty of a mere civil contempt. *McFarland v. State,* 165 Neb. 487, 86 N.W.2d 182 (1957).

In *Eliker v. Eliker,* 206 Neb. 764, 770, 295 N.W.2d 268, 272 (1980), we said: " 'Where a civil contempt is charged, it may be by an affidavit by the party to the action who is injuriously affected. Procedure may be in the original action and need not be by information in the name of the state.' "

The petitioner's motion for citation clearly stated the charges against the respondent and was sufficient to advise the respondent of the contempt charges against him. The record demonstrates that the respondent had an adequate opportunity to defend himself against the charges.

The judgment of the District Court is affirmed. The

petitioner is allowed the sum of $2,500 for the services of her attorney in this court.

AFFIRMED.