MARY JANE KOUBEK, APPELLEE AND CROSS-APPELLANT,
v. JOHN STANLEY KOUBEK, APPELLANT AND
CROSS-APPELLEE.

321 N.W.2d 55

Filed June 25, 1982. No. 44005.

Tedd C. Huston and David C. Huston, for appellant.

Robert E. Roeder, for appellee.

Heard before McCOWN, HASTINGS, and CAPORALE, JJ., and STUART and HIPPE, D. JJ.

STUART, D.J.

This dissolution of marriage action was brought by the appellee, Mary Jane Koubek (Mary Jane), against the appellant, John Stanley Koubek (John),

in January 1979.   Trial was had and final decree was rendered on November 6, 1980.   This decree dissolved the marriage, awarded custody of the minor children to Mary Jane, subject to John's right of reasonable visitation, ordered John to pay $125 per month per child as child support, divided the property, awarded alimony to Mary Jane, and ordered John to pay certain attorney fees.   John appealed, assigning as error the division of property, the awarding of alimony, and the awarding to Mary Jane of a life estate in the residence and 1 acre of land on the "home place."   Mary Jane cross-appealed, assigning as error the division of property, the awarding of only $125 per month per child as child support, and the refusal to award Mary Jane's present attorney a fee for his services.

John and Mary Jane were married on December 25, 1955.   As a result of this union, there are nine living children, of which six were still minors at the time of the marriage dissolution.   This was the first marriage for both parties, and at the time of dissolution, after almost 25 years of marriage, John was 50 years of age and Mary Jane was 42 years of age. Each party had substantial health problems.   Mary Jane was grossly obese, with circulatory problems, and had a possible need for abdominal surgery.   John had open heart surgery in 1973 and now suffers from diabetes.

At the time of the marriage neither party had any substantial assets.   After the marriage John entered a farming partnership with his father and since then has been actively engaged in farming.   John inherited a 480-acre farm at the time of his father's death in 1964 (the "home place").   Since that time the parties have purchased three additional farms totaling 480 acres.   In addition, the parties have acquired four school land leases totaling 2,080 acres. John has become a successful corn farmer and cattlefeeder, and operates a total of approximately

3,500 acres. At the time of John's inheritance of the "home place" in 1964, it had an appraised value of $46,660. Since that time there have been improvements made on this farm, costing between $29,325.33 and $136,577.51. The higher figure is that testified to by Mary Jane, which figure is seriously contested by John, who testified to the lower figure. The trial court did not make a specific finding on this point, but an examination of the record indicates that John's testimony appears more credible here. At the time of the decree the "home place" had a value of $295,030. The total assets of the parties were between $874,000 and $922,000. The debts of the parties totaled $471,000 to $476,000. Therefore, the net worth of the parties at the time of the trial was between $403,000 and $446,000.

The court awarded Mary Jane a 1977 Dodge van, all the furniture and household goods, one quarter section of land, and one-half of five lots and a mobile home located at Lake McConaughy. The court also awarded Mary Jane the life use of the residence and not to exceed 1 acre of land located on the "home place," or, in the alternative, granted John the option to purchase a home for Mary Jane, to be approved by her or the trial court, in Arnold, Nebraska, at a cost not to exceed $40,000. The above-described property awarded to Mary Jane had a value of between $113,000 and $117,000. All other property of the parties was awarded to John, and John was ordered to assume all of the debts of the parties and ordered to pay two of Mary Jane's former attorneys their fees in the sum of $4,000.25. In addition, John was ordered to pay Mary Jane $60,000 alimony, payable $500 per month for 12 months, then $750 per month for 72 months, all payments without interest.

The rules for determining division of property in an action for dissolution of marriage provide no mathematical formula by which such awards can be

precisely determined; they are to be determined by the facts in each case. The court will consider all pertinent facts in reaching an award that is just and equitable. *Matlock v. Matlock,* 205 Neb. 357, 287 N.W.2d 690 (1980). Generally speaking, awards in cases of this kind vary from one-third to one-half of the value of the property involved, depending upon the facts and circumstances of the particular case, and particularly so when the marriage is of long duration and the parties are the parents of all the children involved. *Ragains v. Ragains,* 204 Neb. 50, 281 N.W.2d 516 (1979); *Knigge v. Knigge,* 204 Neb. 421, 282 N.W.2d 581 (1979). This court is not inclined to disturb the division of the property made by the trial court unless it is patently unfair on the record. *Johnson v. Johnson,* 209 Neb. 317, 307 N.W.2d 783 (1981); *Ritter v. Ritter,* 205 Neb. 668, 289 N.W.2d 526 (1980). How property, inherited by a party during the marriage, will be considered in determining division of property or award of alimony must depend upon the facts of the particular case and the equities involved. *Matlock v. Matlock, supra.* The property awarded to Mary Jane on the division of the property is clearly within the guidelines set forth above. Such award is not patently unfair. Therefore, we affirm the trial court's division of property.

The next assignment of error is the awarding of $60,000 alimony to Mary Jane. It should be noted that although John is a successful farmer, farming many acres of corn, and has accumulated a substantial investment in machinery with which to accomplish this purpose, the parties also have very considerable debts which the court ordered John to assume. The courts will avoid a division of property which will destroy or damage the ability of one of the parties to earn a livelihood, or which will destroy the value of property. In dividing the property here, the trial court awarded 160 acres to Mary Jane, of a total land ownership of 960 acres, and also awarded

the 2,080 acres of school land leases to John. The division of property and the issue of alimony are to be determined upon the consideration of all the facts and circumstances. *Ragains v. Ragains, supra;* *Sullivan v. Sullivan,* 192 Neb. 841, 224 N.W.2d 542 (1975); *Boroff v. Boroff,* 197 Neb. 641, 250 N.W.2d 613 (1977). In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion under Neb. Rev. Stat. § 42-365 (Cum. Supp. 1980), as well as the former decisions of this court, is one of reasonableness. The property division and the alimony awarded Mary Jane total approximately $175,000. However, when considering this amount, it must be reduced since the alimony is payable over a term, without interest. Upon an examination of the record, we feel that the trial court's decision was reasonable, and in this regard it is affirmed.

John complains that the court awarded Mary Jane a life estate in the house, garage, and yard, consisting of 1 acre, located on the "home place," which he points out is the farm he inherited from his father. The farmyard at this location is also the center of John's farming and cattlefeeding operations. This was the residence of the parties at the time of the separation. Upon separation, John moved out and into a house located on another of their farms. However, the court gave John the option of purchasing Mary Jane a comparable home in Arnold, Nebraska, costing not more than $40,000. Obviously, Mary Jane and the minor children must live somewhere; the trial court was confronted with the difficult problem of allowing Mary Jane to continue to utilize the residence on the "home place" (which is already set up as a "going operation") or of requiring further capital expenditure of a move to town when the debt of the parties already exceeds one-half of their assets. This is a decision better made by John than by the trial court. Therefore, John was given the op-

tion of allowing them to continue to live in the residence on the "home place" or of purchasing them a home in Arnold. In the event that Mary Jane will not agree to the suitability of such home, John may seek the approval of the trial court. The decision of the trial court was reasonable, and in this respect it is affirmed.

Mary Jane complains that the allowance of $125 per month per child as child support is inadequate. The only evidence presented regarding John's income for a full year was the year 1979 when the parties' net income was $20,292. John has had substantial reverses in the past, since he is engaged in farming, a business that has large risks. Mary Jane testified the crop was completely hailed out in the year 1975. They lost $70,000 in 1974 on feedlot cattle because of a drop in prices. In 1977 they suffered a partial hail loss. At the time of the trial, John was handling approximately 3,500 acres, of which he had planted 450 acres to irrigated corn and 1,250 acres to dryland corn. He testified that his dryland corn for the year 1980 would yield between 20 and 30 bushels per acre. He was required to assume $471,000 in debts. We are of the opinion that with John's huge debt and uncertain income this was a reasonable amount for child support.

Mary Jane complains that her present attorney was not allowed an attorney fee. She retained four different attorneys in the trial of this case. The court ordered John to pay her first attorney a fee in the amount of $1,714.60, and also required him to pay her second attorney a fee in the amount of $2,285.65. The court refused to have John pay either her third attorney or her present attorney. In an action for dissolution of marriage, the award of attorney fees is discretionary with the trial court and depends on a variety of factors, including all the circumstances, such as the amount of the division of property and alimony awarded, the earning capacity of the par-

ties, and the general equities of the situation. *Brown v. Brown,* 199 Neb. 394, 259 N.W.2d 24 (1977). We cannot say that the award of attorney fees in this case was an abuse of discretion.

The decree of the District Court is affirmed in all respects. Mary Jane is awarded the sum of $1,000 for the services of her attorney in this court.

AFFIRMED.