BRENDA CRON MOELLER, APPELLANT, V. GARY JOSEPH
MOELLER, APPELLEE.

338 N.W.2d 749

Filed September 30, 1983. No. 82-509.

Robert G. Pahlke of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellant.

John L. Robinson, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and GRANT, D.J.

PER CURIAM.

Brenda Moeller, mother of Kimberly Moeller, appeals from the District Court for Box Butte County, Nebraska, which entered a decree of dissolution of marriage and awarded custody of Kimberly to the father, Gary Moeller. We affirm.

Brenda and Gary Moeller were married in Alexandria, Louisiana, and Kimberly was born of this marriage. After their marriage the Moellers returned to Nebraska in 1978 and lived in the home of Gary's parents. During that time, Brenda was observed shaking Kimberly violently on several occasions. Once, while Kimberly was watching television, Brenda jerked Kimberly by her arm from a chair and caused injury which required medical attention for Kimberly's sprained shoulder. During this period, Brenda used a ruler to train Kimberly's eating habits. If Kimberly would not finish a predetermined amount of food within a specified time,

Brenda struck Kimberly about her hands and face. The marital problems of Brenda and Gary mounted.

In October 1979 Brenda, with Kimberly, returned to Louisiana to provide postsurgery care for Brenda's mother. During this sojourn, Brenda met Robert Smith and nurtured a relationship with him.

When Gary's father died in December 1979, Brenda returned to Nebraska with Kimberly and remained for 4 months. Brenda was again observed using the ruler and clock method to form Kimberly's eating habits. Kimberly was approximately 2 years old at that time. During this time, the marriage of Brenda and Gary further deteriorated to the point that Brenda returned to Louisiana on April 20. Brenda left Gary a letter which indicated that she was having difficulty handling situations involving pressure and began to "take everything out on Kim, and that's not right. . . . I myself just can't take anymore of this." While in Louisiana, the relationship with Smith was resumed.

In August 1980 Brenda and Kimberly flew to Rapid City, South Dakota, and met Gary. An apparent reconciliation was achieved, and Brenda said she wanted to visit her grandparents for one last time. Upon her return to Louisiana Brenda telephoned Gary that she had changed her mind.

In February 1981 Gary drove to Louisiana, where Brenda told him that she had obtained a Mexican divorce and had married Robert Smith. It later developed that the Mexican divorce was invalid. After some discussion Brenda decided that she would return to Nebraska with Gary, but subsequently changed her mind. Gary returned to Nebraska with Kimberly. On October 27 Brenda commenced proceedings in Nebraska for dissolution of her marriage with Gary and sought custody of Kimberly.

At trial in May 1982, evidence demonstrated that Brenda frequently disciplined Kimberly more harshly than necessary. Witnesses observed bruises on Kimberly's body on various occasions. Brenda ad-

mitted she would "lose [her] patience and [she] would start yelling at [Kimberly] and [she] just got to the point where [she] had no patience with [Kimberly] at all . . . ." A minister who provides a cooperative preschool testified that Gary related well with the other children and got along very well with Kimberly. The environments to be offered by Brenda and Gary, respectively, and the relationship between Kimberly and her parents were the subjects of extensive testimony.

Robert Smith did not testify at trial, because he was working on an offshore oil rig in Africa. No deposition of Robert Smith was offered at trial, and no continuance was sought to permit Robert Smith to testify at the trial.

The trial court determined that the marriage between Brenda and Gary was irretrievably broken and, therefore, dissolved their marriage and awarded custody of Kimberly to Gary, with the right of reasonable visitation granted to Brenda.

An appeal in a dissolution of marriage action is reviewed de novo by this court. *Burnham v. Burnham*, 208 Neb. 498, 304 N.W.2d 58 (1981). The polar star by which all child custody determinations must be guided is the best interests and welfare of the child. *Theye v. Theye*, 200 Neb. 206, 263 N.W.2d 92 (1978); *Moninger v. Moninger*, 202 Neb. 494, 276 N.W.2d 100 (1979); *Broadstone v. Broadstone*, 190 Neb. 299, 207 N.W.2d 682 (1973); *Wible v. Wible*, 209 Neb. 708, 310 N.W.2d 515 (1981); Neb. Rev. Stat. § 42-364 (Reissue 1978). In determining the best interests of the child, " ' "this court will give weight to the fact that the trial judge saw and observed the witnesses and the attitude of the parents at the trial." ' " *Wible v. Wible, supra* at 716, 310 N.W.2d at 519, citing *Moninger v. Moninger, supra.*

" ' "The judgment concerning the custody of children is necessarily quite subjective in nature. Many factors may be considered in light of the particular circumstances of each individual case. The general

considerations of the moral fitness of the parents, of respective environments offered by each parent, the emotional relationship between the children and their parents, their age, sex, and health, the effect on the children of continuing or disrupting an existing relationship, the attitude and the stability of character of each parent, and the capacity to furnish the physical care and education and needs of the children are some of many factors for the court to consider." ' " *Wible v. Wible, supra* at 715-16, 310 N.W.2d at 519.

The instability of Brenda and her inability to meet and cope with adversity and stress were factors which weigh heavily in this decision. Also, Robert Smith is a factor of the environment in which Kimberly would be placed if custody were granted to Brenda. The absence of adequate information regarding Robert Smith and even the absence of Smith himself are also weighed on the balance in determining Kimberly's custody. Rather than place Kimberly in an environment where a large but unknown element relates to Smith, the best interests of Kimberly will be achieved by the known environment existing in custody with Gary. We find that the best interests of Kimberly Moeller require that her custody be placed with Gary Moeller. Therefore, the judgment of the District Court is affirmed.

AFFIRMED.