CANDICE J. GRACE, APPELLANT AND CROSS-APPELLEE, V. MELVIN A. GRACE, APPELLEE AND CROSS-APPELLANT.

380 N.W.2d 280

Filed January 24, 1986.   No. 84-948.

Robert P. Chaloupka of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellant.

Richard A. Douglas of Winner, Nichols, Douglas and Kelly, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Candice J. Grace appeals from a decree entered by the district court for Scotts Bluff County, Nebraska, dissolving the marriage between her and the appellee, Melvin A. Grace. Following trial, the district court dissolved the marriage of the parties and awarded custody of the parties' 6-year-old son to Mrs. Grace and custody of the parties' 13-year-old son to Mr. Grace. Mr. Grace was ordered to pay Mrs. Grace $600 per month alimony for not more than 7 years, child support for the child in Mrs. Grace's custody in the amount of $300 per month, and attorney fees in the amount of $2,000. The district court excluded from the marital estate certain ranch corporation stock owned by Mr. Grace and awarded the stock to him on the basis that the stock had been received by Mr. Grace by way either of gift or inheritance. The court then divided the rest of the personal property of the estate by awarding Mrs. Grace $10,000 in cash, awarding each party his or her own personal property, requiring Mrs. Grace to return to Mr. Grace certain property items, and requiring Mrs. Grace to return to the ranch corporation its automobile which was in her possession.

In her appeal Mrs. Grace maintains that the trial court erred (1) in granting custody of the older child to Mr. Grace, (2) in awarding an inadequate amount of child support for the child in her custody, (3) in failing to include in the marital estate the stock in the ranch corporation, (4) in awarding an inadequate amount of alimony, and (5) in awarding an inadequate attorney fee. Mr. Grace has cross-appealed, maintaining that the trial court erred in granting the custody of the younger child to Mrs. Grace and in awarding Mrs. Grace an excessive amount of attorney fees. We have reviewed the record de novo as we are required to do in matters of this type. See, *Clark v. Clark*, 220 Neb. 771, 371 N.W.2d 749 (1985); *Lainson v. Lainson*, 219 Neb. 170, 362 N.W.2d 53 (1985); *Ford v. Ford*, 219 Neb. 13, 360 N.W.2d 495 (1985); *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984). We modify the court's order for division of property and affirm the decision of the district court in all other respects.

As might be anticipated, the facts are somewhat in conflict. Nevertheless, it can be determined from the record that the parties met when Mrs. Grace was 17 and Mr. Grace 24 and were married 5 months later in July of 1968. They first lived north of Lewellen, Nebraska, in a small house owned by Grace Land and Cattle Company, a family ranching corporation. While Mrs. Grace testified that she personally made improvements to the house, the evidence indicates that both Mr. and Mrs. Grace together decorated the interior of the house. All improvements to the exterior, as well as work done on the kitchen and bathroom cabinets, were done by hired help employed by the family corporation.

The parties later moved into a second house owned by the corporation and, again, hired help made improvements. Mrs. Grace testified that she spent a great deal of time in going over plans and designs, but it does not appear that such efforts on her part substantially contributed to enhancing the value of the property.

Mr. Grace owns 18.14 percent of the outstanding stock of Grace Land and Cattle Company, and throughout the marriage Mr. Grace was employed on the ranch by the ranch corporation. Prior to 1971, he was not on a salary but just used

the company checkbook to make draws for living expenses. However, after 1971 he was placed on a salary, and at the time of the trial his monthly salary was $1,500. He also received additional benefits from the ranch, including meat, a house to live in, payment of utilities, a car, a two-wheel-drive pickup truck, a four-wheel-drive pickup truck, and gasoline. Additionally, he received dividends from the corporation in those years in which dividends could be paid. The dividends were credited against the draws made by Mr. Grace in excess of his salary. At the time of trial the record indicated that Mr. Grace was indebted to the corporation for draws in excess of his salary in the amount of approximately $86,000, though there was no formal agreement that he would repay that sum. Because Grace Land and Cattle Company is a subchapter S corporation for federal income tax purposes, Mr. Grace is charged, for federal income tax purposes, with profits or losses of the company, regardless of whether there is any actual cash-flow to him.

During the first 10 years of the parties' marriage, Mrs. Grace gave birth to the two children referred to above, gave birth to another child who lived only 3 hours, and suffered three miscarriages.

Although Mrs. Grace contended that she served as a "ranch wife," the evidence indicated that she did not take an active role in ranch duties and work. The man who worked with Mr. Grace on a portion of the corporation ranch testified that Mrs. Grace never worked on a tractor, did not do any haying, did not feed the cattle, and did "damn little" work at roundup time. Mrs. Grace began teaching aerobics during the marriage and currently is teaching aerobics and managing a gym at a weekly salary of $250, working 8 a.m. to 3 p.m. and 5 p.m. to 6:30 p.m. She also intends to work, on the average, two nights a week at a local college from 6:30 p.m. to 8 p.m.

The evidence further discloses that on the date of their marriage Mr. Grace owned 477 shares of the common stock of Grace Land and Cattle Company, of which 237 shares were received by gift and 240 shares were inherited. During the marriage, Mr. Grace acquired an additional 261 shares, of which 117 shares were inherited and 144 shares were a gift.

There is a great deal of evidence by each of the parties attempting to show whether each party was or is a good parent. Little good can be served in memorializing forever those facts in this opinion. Both are now relatively normal and both are good parents who truly love their children.

We turn, then, first to the question of whether the trial court erred in failing to include any of the shares of Grace Land and Cattle Company in the marital estate. In *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 733, 325 N.W.2d 832, 834 (1982), we said that "when awarding property in a dissolution of marriage, property acquired by one of the parties through gift or inheritance ordinarily is set off to the individual receiving the inheritance or gift and is not considered a part of the marital estate." The rationale for such a general rule is fairly obvious. Persons make gifts or leave property to individuals in the belief that such gift or inheritance will remain with the beneficiary and not be divided by a court to thereafter become a part of the assets of some other family. To hold otherwise would be to defeat the intent of the individual making the gift or leaving the inheritance. We recognized in *Van Newkirk* that among the exceptions to this rule is the exception where the evidence establishes that both of the spouses have contributed to the improvements or operation of the property which one of the parties owned prior to the marriage or received by gift or inheritance during the marriage, or when the evidence shows that the spouse not owning the property prior to the marriage or not receiving the inheritance or gift has significantly cared for the property during the marriage. See *Rhodes v. Rhodes*, 210 Neb. 373, 314 N.W.2d 271 (1982). The evidence in this case does not support the claim that such exceptions exist in this case. Mrs. Grace's efforts with regard to the improvements or operation of property owned by Grace Land and Cattle Company, in which her husband owned stock, were not within those exceptions.

There are other considerations, however, beyond the exception set out in *Van Newkirk v. Van Newkirk, supra*. The *Van Newkirk* rule itself does not purport to be an ironclad, rigid rule for all circumstances. In *Matlock v. Matlock*, 205 Neb. 357, 359, 287 N.W.2d 690, 691 (1980), we considered a situation

where the appellant husband argued that paying the appellee wife the sum of $7,800 "gives to her property which was a gift to himself [Mr. Matlock] and his [deceased] first wife and that the property should be entirely excluded from consideration in determining any award to the respondent." In that case it was undisputed that the residential property was acquired initially by a gift and ultimately by inheritance by Mr. Matlock, who had paid the expenses of maintenance, taxes, insurance, and utilities on the property during the entire time of the Matlock marriage. The parties in that case had been married in November of 1974 and had had no children. The appellant had three children by his deceased first wife.

This court approved the payment of $7,800 to the appellee wife, stating at 359, 287 N.W.2d at 691:

> We have consistently held that rules for determining division of property in an action for dissolution of marriage provide no mathematical formula by which such awards can be precisely determined; they are to be determined by the facts in each case. The court will consider all pertinent facts in reaching an award that is just and equitable. Blome v. Blome, 201 Neb. 687, 271 N.W.2d 466; Pfeiffer v. Pfeiffer, 203 Neb. 137, 277 N.W.2d 575. The court shall also have regard for the circumstances of the parties, the duration of the marriage, contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities. Campbell v. Campbell, 202 Neb. 575, 276 N.W.2d 220. How property, inherited by a party before or during the marriage, will be considered in determining division of property or award of alimony must depend upon the facts of the particular case and the equities involved. Ulmer v. Ulmer, *ante* p. 351, 287 N.W.2d 685.

We reaffirm the general rule set out in *Matlock v. Matlock, supra*, and hold that, on the basis of the record in this case, the stock held by Mr. Grace in the Grace Land and Cattle Company should be considered in determining the division of property. As stated in *Ulmer v. Ulmer*, 205 Neb. 351, 353, 287 N.W.2d 685, 687 (1980), where it was alleged that the trial court erred in

not allowing a party the full amount of her inheritance, "While the source of funds brought into a marriage is a consideration in the division of property, it is not an absolute." See, also, *Koubek v. Koubek*, 212 Neb. 2, 321 N.W.2d 55 (1982).

Here, Mr. Grace's shares of stock represented 18.14 percent of the stock of a farm and ranch corporation which had a net value of $6,834,000 as valued by the principal stockholder (Mr. Grace's father), $8,927,300 by Mrs. Grace's appraiser, and $9,132,200 in the corporation's 1984 financial statement. Using the average of these figures, Mr. Grace's minority interest would be, mathematically, approximately $1,500,000.

It is obvious that to award Mrs. Grace a portion of this stock in kind would not be of any immediate or possible future benefit to her. The corporation does not pay dividends, and it is totally an effort headed by Mr. Grace's father and mother and shared in by all their children, all of whom do active work each day in the furtherance of the corporation's business. To inject an outsider—especially an ex-spouse of one of the family members—would be unfair to other stockholder members of Mr. Grace's family and to appellant Mrs. Grace herself.

Nevertheless, in reaching a just and equitable award, the fact remains that due to the way the parties to this marriage lived during the marriage, they did not acquire a house or a car or any property a married couple of 16 years, with above average assets, would be expected to acquire. We must consider that particular situation in this case. As representing a minority interest in a closely held, strictly family corporation, the valuation of $1,500,000 set out above would be unreasonably high. What Mr. Grace really owns, as reflected in his shares of stock in the family corporation, is an expectancy interest in a large farming and ranching operation. Accordingly, appellant Mrs. Grace is awarded the sum of $100,000 as division of property under the particular facts of this case. Such amount is payable at the rate of $10,000 per year, with interest as provided in Neb. Rev. Stat. § 45-103 (Reissue 1984) on the unpaid balance. The amount of $10,000 allowed under the trial court's decree shall be considered as the first payment hereunder, with the second payment due January 15, 1987.

We then turn to the question of the custody of the two

children. Attempting to determine where children should be placed after the dissolution of a marriage is an extremely difficult matter. Nevertheless, children must be placed somewhere, and therefore their custody must be resolved by the court if the parties are unable to otherwise agree. As we observed in *Moeller v. Moeller*, 215 Neb. 360, 362-63, 338 N.W.2d 749, 751-52 (1983):

> " ' "The judgment concerning the custody of children is necessarily quite subjective in nature. Many factors may be considered in light of the particular circumstances of each individual case. The general considerations of the moral fitness of the parents, of respective environments offered by each parent, the emotional relationship between the children and their parents, their age, sex, and health, the effect on the children of continuing or disrupting an existing relationship, the attitude and the stability of character of each parent, and the capacity to furnish the physical care and education and needs of the children are some of many factors for the court to consider." ' "

In the present case the 13-year-old expressed a strong preference for living on the ranch with his father. While the wishes of a child are not controlling, if the child is of sufficient age and has expressed an intelligent preference, his preference is entitled to consideration. *Hall v. Hall*, 178 Neb. 91, 132 N.W.2d 217 (1964). See, also, *Boroff v. Boroff*, 197 Neb. 641, 250 N.W.2d 613 (1977). His basis for wanting to live on the ranch and not in Scottsbluff seems reasonable, and considering those various factors set out in *Moeller, supra*, permitting him to live on the family ranch with his father and other relatives who also live and work on the ranch seems to be in his best interest. The custody of the 6-year-old seems to be another story. As a general rule, efforts should be made not to separate children. However, in the instant case we have a different situation. The younger child is only 6 years old. Although they are only 7 years apart in age, at this time in their lives that 7 years is substantial. The district court's determination that the younger child would do better with his mother does not seem improper.

Mrs. Grace attempted to show that Mr. Grace would not be a

stable parent. We believe, however, that the record discloses that at the present time Mr. Grace is stable and able to provide the older child with a more than adequate home and that Mrs. Grace could do likewise for the younger child. There seems to be no evidence compelling a different result from that ordered by the district court. While it is true, as we have already indicated, that these matters, including child custody, are reviewed by us de novo, recently in *Clark v. Clark*, 220 Neb. 771, 777, 371 N.W.2d 749, 754 (1985), we said:

[D]eterminations as to the custody of children are matters initially entrusted to the sound discretion of the trial judge, which matters, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion, keeping in mind, however, that this court will give weight to the fact that the trial judge observed and heard the witnesses and accepted one version of the facts rather than the other.

We believe an examination of the record fails to disclose any abuse of discretion by the district judge, and for that reason his determination that the older child be placed with the father and the younger with the mother is affirmed. That disposes of both the custody issue raised by Mrs. Grace in her appeal and that raised by Mr. Grace in his cross-appeal.

We turn, then, to whether the alimony awarded Mrs. Grace was inadequate. We believe it was not. Neb. Rev. Stat. § 42-365 (Reissue 1984) provides in part:

When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

The evidence in this case discloses that Mrs. Grace's annual income is approximately $14,400. Mrs. Grace further provided

the district judge with information concerning her monthly expenses. These were shown to be $1,158.40 per month. Therefore, considering the alimony and child support awarded by the district judge, Mrs. Grace has income of $2,100 per month (independent income $1,200, alimony $600, and child support $300) and expenses of $1,160 per month, leaving her a net income, after expenses but before taxes, of $940 per month. As we have said recently in *Ford v. Ford*, 219 Neb. 13, 360 N.W.2d 495 (1985), determining what is reasonable alimony under given circumstances is never an easy task. The standard of reasonableness, by its very nature, defies clear and specific quantification inasmuch as the determination of reasonableness is directly tied to the virtually unique circumstances of each case.

We went on further in *Ford, supra*, to hold that the standard of review established by this court in *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984), should apply with regard to alimony and that the rule is to the effect that the matter is initially entrusted to the sound discretion of the trial judge, and while the matter will be reviewed on appeal de novo on the record, it will be affirmed in the absence of an abuse of the trial court's discretion. We are simply unable to say, in light of the record presented here and the purpose of alimony as prescribed in § 42-365, that the trial court abused its discretion. We believe the award of alimony must be affirmed at this time.

We turn, then, to the question of child support. The trial court directed that Mr. Grace pay to Mrs. Grace for the support of the minor child in her custody the sum of $300 per month. The amount of child support ordered in a dissolution of marriage action is initially left to the sound discretion of the trial court and is reviewed de novo on the record in this court and is affirmed in the absence of an abuse of discretion. *Lainson v. Lainson*, 219 Neb. 170, 362 N.W.2d 53 (1985). We have examined the record in this regard and determine there has been no abuse of discretion. We therefore affirm the district court's decree with regard to child support.

That leaves us, then, with the question of the attorney fee. Our examination of the record fails to disclose any abuse of discretion by the trial court in the awarding of these fees, and

for that reason the order in that regard should be affirmed. See *Guggenmos v. Guggenmos, supra.*

The judgment of the district court is therefore affirmed as modified. Mr. Grace is ordered to pay to Mrs. Grace the sum of $2,000 to apply upon the fee charged by Mrs. Grace's attorney for services performed in this court.

AFFIRMED AS MODIFIED.

KRIVOSHA, C.J., concurring in part, and in part dissenting.

I concur with the majority in all respects except with its finding that the *division of property* should be modified. To that extent I must respectfully dissent. I do so because I believe that the law as set out by the majority herein and the evidence as presented by Mrs. Grace cannot support the action taken by the majority with regard to the awarding of additional property. The majority concedes that our holding in *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982), is that property acquired by one of the parties through gift or inheritance ordinarily is set off to the individual receiving the inheritance or gift and is not considered a part of the marital estate. The majority further concedes that there is no evidence in the instant case to bring this property within any exception noted in *Van Newkirk*. Nevertheless, the majority then suggests that the *Van Newkirk* rule does not purport to be an ironclad, rigid rule for all circumstances. In doing so the majority gives us no indication as to how or under what circumstances this new exception to *Van Newkirk* should be employed. The majority relies upon our holding in *Matlock v. Matlock*, 205 Neb. 357, 287 N.W.2d 690 (1980), as the basis for its holding herein. The facts, however, in the *Matlock* case disclose that during the marriage Mrs. Matlock was continuously employed, earning gross wages of approximately $19,000 per year, all of which went into the family income. There is no such evidence in the instant case.

In modifying the decree regarding the division of property, the majority, in the instant case, determines that the stock held by Mr. Grace in the Grace Land and Cattle Company should be considered in determining the division of property. A further problem with that determination is that the only evidence with regard to the value of the stock in Grace Land and Cattle

Company was its value if the entire corporation was dissolved. The majority properly recognizes that a minority interest in a closely held, strictly family corporation is not the same as stock held in a public corporation and acknowledges that the valuation of $1,500,000 would be unreasonably high. Yet, without evidence of any other value, including what the value of the stock is as "an expectancy interest in a large farming and ranching operation," as characterized by the majority, the majority awards Mrs. Grace the sum of $100,000 as division of property. We are without any indication as to how one should mathematically determine the division of a future interest when no evidence has been offered as to the value of that interest.

While it may very well be that Mrs. Grace is entitled to more alimony than was awarded to her by the district court, it was incumbent upon Mrs. Grace to produce sufficient and appropriate evidence to support her claim. This she did not do. We should not be filling gaps in the evidence, no matter how meritorious such action might seem. For that reason I must respectfully dissent from that portion of the majority decision.