MARILYN ANN LYNCH, APPELLEE, v. DONALD RAYMOND LYNCH, APPELLANT.
241 N. W. 2d 123

Filed April 21, 1976. No. 40241.

Harry R. Meister of Meister & Morrison, for appellant.

Richard A. Douglas of Herman & Herman, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.

Donald Raymond Lynch appeals from the child support, alimony, and property division provisions of a decree entered by the District Court in an action against him brought by his wife, Marilyn Ann Lynch, for the dissolution of their marriage. We affirm.

Donald and Marilyn Lynch were married in Scottsbluff, Nebraska, on November 17, 1956. They had five children who, at the time of the trial, ranged from 4 to 16 years of age. At that time Donald was 41 years of age and Marilyn was 42. The parties had been separated for about 4 years before Marilyn filed the action. During that period, the children lived with their mother and have continued to live with her since the entry of the decree.

So far as material to this appeal, the decree entered by the court on April 14, 1975, required Donald Lynch to pay as child support for the five children $1,000 per month, payable in installments of $500 each on the 25th and 10th day of each month. The court specified that the child support was based on $200 per child, and further provided that when any child became of age, married, or died the support was to be reduced by the amount designated for each child, except for the last two children, for whom the support is to be $250 per month for each child until he or she reaches his or her maturity. The decree also effected a division of property under which Marilyn was to receive the family home subject to encumbrances, all household furnishings and her separate effects located in the family home, a 1973 LTD Ford automobile, free and clear of encumbrances, and the cancellation of a $500 loan made to Marilyn by Donald. Donald received as his separate property "[a]ll property wherever located, both real and personal, whether in his name and under his control or in the name and control of the Donald Lynch Construction Company subject to encumbrances."

It was further provided in the decree that Donald should pay Marilyn as alimony "the sum of $900.00 per month, beginning May 1, 1975, for a period of 121 months. * * * The alimony herein granted shall be deemed to be alimony in gross and is not to be affected in any way or terminated by the marriage or death of either party. This alimony is not to draw interest except on

delinquent payments, and any and all delinquent payments shall draw interest at the rate of 8 percent per annum until paid. The unpaid alimony shall not be a lien on any of the property of respondent, except in the event of his death, the unpaid alimony shall forthwith become a charge against his estate and a lien on all his property." The decree also contained provisions requiring Donald to keep in force and effect certain insurance policies on the children, and to pay certain outstanding obligations and costs.

It appears from the record that the parties brought little, if any, money or assets into the marriage. At that time, Donald was employed as a laborer and in 1956 or 1957 commenced installing concrete-lined ditches using an old panel truck. He testified there were many years in which he did not make $2,000. At the time of the marriage, Marilyn was employed as a bookkeeper at a local hospital. She later acted as secretary and bookkeeper for her husband in his construction company, while also continuing her outside employment at the hospital, and rearing three children. In 1962, Donald formed a partnership with one Herbert Ziegler, and engaged in the contracting business under the names of Lynch Construction Company and also Ziegler and Lynch. At the insistence of her husband, Marilyn ceased to work outside their home so that she might devote full time to rearing their children. Donald continued to work in his construction business, engaging principally in water, sewer, and paving projects. In April of 1974, his partner, Ziegler, died; and shortly thereafter, Donald became the sole owner of the construction business by purchase from the estate of his deceased partner pursuant to a prior written agreement. The consideration for the purchase of his partner's interest in the construction business was $100,000, of which $80,000 was paid in cash and $20,000 by the transfer of equipment. Also, as a result of Mr. Ziegler's death, Donald received insurance

proceeds totaling $185,983.81, apparently from partnership insurance.

It appears that the monthly payments required from Donald under the terms of the decree are the sums of $1,000 for child support, $900 as alimony in gross, which we conclude obviously represents both property division and support payments, and approximately $244 for insurance premiums, or a total of $2,144. It also appears that he may be required to pay a substantial amount for drugs and medicines. His income tax returns for the years 1972, 1973, and from January to July of 1974 indicate that the amount expended for this purpose averaged out to approximately $114 per month. At the trial, Marilyn estimated that the monthly cost of running her household was around $988.50, not counting clothing, recreation, and other extras. She itemized her expenses in her testimony. On the other hand, Donald testified at the trial that in his opinion $800 to $900 per month would be adequate. His only testimony as to his own expenses for living apart from his wife was rent for his room in a Scottsbluff motel in the amount of $184.60 monthly, and office rent of $174 per month. He also testified that he eats his meals out.

We first consider the question of the excessiveness of the child support award as contained in the decree, and as augmented by the insurance expense and medical payments. In determining the amount of child support to be awarded, the status, character, and situation of the parties and all attendant circumstances must be considered. In determining those circumstances, the financial position of the husband as well as the estimated costs of support of the children must be taken into account. Connolly v. Connolly, 194 Neb. 241, 231 N. W. 2d 337 (1975); Schwaninger v. Schwaninger, 192 Neb. 681, 223 N. W. 2d 829 (1974). Section 42-364(3), R. S. Supp., 1974, also provides that in determining the amount of child support to be paid by a parent, the court shall consider the earning capacity of each parent.

Although Marilyn has had prior experience working at a local hospital and for her husband doing bookkeeping and credit work, she has not worked outside the home since 1962. At the time of the trial, the youngest child was 4 years of age; and Marilyn testified that she could not care for the children and work outside the home. On the other hand, although it is true that in the early days of his contracting business Donald did not make much money, the record shows that after the formation of the Ziegler and Lynch construction partnership in 1962 or 1963, the company began to grow rapidly and bring in sizable amounts of money for the partners. The record indicates that Donald drew the following amounts out of the business during recent years: 1970, $29,676.60; 1971, $36,594.50; 1972, $42,004.36; 1973, $44,734.46 (including his salary of $12,000); and 1974, $62,486.27.

We fully realize that a "draw" only represents what Donald took out of the business, and does not reflect the income of the business nor represent Donald's share of the profits; but there is no question that the business of the partnership increased substantially from 1971 on. In 1972 the net profits were $44,000. In 1973 they were $84,000. Of particular interest, however, is exhibit 9, the partnership income tax return, covering the period from January 1 to April 12, 1974, the date of the death of the partner, Ziegler. During that period of less than 4 months, it appears that the gross profit of the partnership was $178,729.64 and the return shows ordinary income for that period of $116,389.05. That income tax return also shows a long term capital gain on the sale of a sodding business owned by the partnership in the amount of $26,274.93 and a short term capital loss in the commodity future's market of $32,886.78. According to the testimony of an accountant who testified at the trial, Donald's share of the profit for that 4-month period was $61,594.52 in ordinary income. The record

does not contain the final income tax return for the year 1974, as it was not received into evidence.

Donald also owns 5 acres of unencumbered land valued at $11,000, on which a shop is located. He owns a drilling outfit valued by him at $1,500 and stocks valued at $2,500. He also owns three quarterhorses, which he purchased for $27,714.70 as an investment for the business. He has already commenced racing these horses, and testified he goes to Denver almost every weekend to watch his horses run. Donald also testified that in 1974 his company purchased about $100,000 of new equipment, which, at the time of the trial, was subject to a purchase money mortgage of approximately $14,000.

We have stated that the decision of a trial court in awarding child support will not be disturbed on appeal unless it appears that the court abused its discretion. Hermance v. Hermance, 194 Neb. 720, 235 N. W. 2d 231 (1975). We do not believe the record reveals an abuse of discretion in the award of child support. While the amount involved is significant, it does not appear to be excessive. There are five children involved, some of whom are approaching college age. In the past Donald has been an excellent provider and been generous with Christmas money and birthday gifts. It does not appear he has refused requests of his ex-wife or children for money.

We now discuss together, as did counsel for Donald in his brief, the question of whether the property division and the award of alimony in gross totaling $108,900, payable in installments of $900 for a period of 121 months, was excessive. Appellant Donald contends that the amount of the award of the specific property in addition to the award of $108,900 as alimony in gross constitutes an award to Marilyn of over 100 percent of the value of the assets of the parties; and is "grotesque and completely incongruous." Whether or not this allegation is correct necessarily involves the question of the valuation of the Lynch Construction Company, about which

there is conflicting evidence in the record. A certified public accountant, testifying for Marilyn, on the basis of capitalized earnings stated that if net earnings were $40,000 yearly, at a return rate of 8 percent, it would represent or require an initial investment or capital of $500,000 in order to yield that return. He also testified that an 8 percent return would not be a high rate of return to use as a base line. On the other hand, appellant Donald contends that the only competent evidence showing the company's worth was given by him. He testified that in his opinion the company was worth between $80,000 and $85,000. He did not call a certified public accountant to testify as to the value of his business, although he had employed accountants to prepare financial statements which were received in evidence. In cases of conflicting testimony, such as this, we have held that the court will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. Olson v. Olson, *ante* p. 8, 236 N. W. 2d 618 (1975); Tavlin v. Tavlin, 194 Neb. 98, 230 N. W. 2d 108 (1975). The fixing of alimony or distribution of property rests in the sound discretion of the District Court, and, in the absence of an abuse of discretion, will not be disturbed on appeal. Olson v. Olson, *supra*; Wheeler v. Wheeler, 193 Neb. 615, 228 N. W. 2d 594 (1975). We conclude that there was no abuse of discretion on the part of the trial court with respect to the amount of the property and alimony provisions established in its decree; and we, therefore, affirm the judgment of the District Court.

AFFIRMED.