MARY LAINSON, APPELLEE AND CROSS-APPELLANT, V. ROGER LAINSON, APPELLANT AND CROSS-APPELLEE.
362 N.W.2d 53

Filed February 1, 1985.   No. 84-260.

Jay L. Welch of Rickerson & Welch, for appellant.

Peter C. Bataillon of Sodoro, Daly and Sodoro, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This appeal is from an order modifying an earlier modification of a dissolution of marriage decree. The record shows that petitioner-appellee, Mary Lainson, and respondent-appellant, Roger Lainson, were married on April 30, 1966, and a boy was born of that marriage on February 20,

1967. The parties were divorced by decree entered by the district court for Douglas County, Nebraska, on August 26, 1971. At that time the court deferred the decision as to permanent custody of the child and awarded possession of the child to Mary. The court also ordered "that if any social security benefits are due to [the child], as a result of defendant's physical condition, defendant [Roger] is ordered to pay the same to plaintiff [Mary] as child support."

By application filed January 19, 1979, Roger sought permanent custody and possession of the child. Roger alleged in that application that there had been a change of circumstances in that he had remarried and owns his own home and can give said "minor a stable and rewarding home life." After hearing, the court modified the divorce decree by order entered March 11, 1980. This modification granted custody and possession of the minor child to Roger, and further ordered that "the defendant [Roger] shall hereafter have no duty to make any child support payments for the support of [the minor child] and defendant shall be entitled to any Social Security benefits payable hereafter for the benefit of the Minor."

On May 16, 1983, Mary filed an application for modification of the decree, seeking to change custody of the minor from Roger to herself and asking for child support. Mary alleged the circumstances had again changed in that the minor child, then age 16, had voluntarily moved from Roger's residence to Mary's residence and desired to stay with Mary. Mary also requested child support. Roger resisted this application, alleging that the minor child should stay with him for the child's best interests, notwithstanding the minor's desires, and further requesting that Mary's visitation privileges be terminated.

After hearing, the trial court, on December 23, 1983, entered an order granting Mary custody of the minor and reserving decision on the issue of child support, fees, and costs, including the cost of an expert witness at the hearing. By amendment (filed with the permission of the court) to his response to Mary's application, Roger alleged that he was without any earning capacity whatsoever because he was "a permanently totally disabled quadraplegic [sic] and that the Court is without

authority to order the Respondent to pay support for the parties' minor child from the income or assets of the Respondent." Roger further alleged that Mary was entitled only to Social Security benefits payable for the benefit of the parties' minor child.

On January 13, 1984, the trial court entered its order finding that while the Respondent is not capable of earning a wage, he does have such earning capacity as is contemplated by Neb. Rev. Stat. §42-264(3) (1982 Cum. Supp.).

As to the claim of credit or offset by virtue of the Social Security payments, the sole consideration provided by the statute quoted above is the earning capacity of each parent. The income of the child or payments to him from a source other than from the parents is not a factor I may consider under the statute in determining the amount of child support to be paid by a parent.

This appeal is from the trial court's order of January 13, 1984. Roger alleges that the court erred (1) in determining that a permanently, totally disabled person has earning capacity as defined in Neb. Rev. Stat. § 42-364(3) (Reissue 1984); (2) in determining that Social Security benefits paid for the support of a minor child because of the present disability of the child's parent are not a substitute for the earning capacity of the disabled parent; and (3) in determining that

Social Security disability payments made for the specific benefit of a child as a result of the disability of a parent were a collateral source and could not be either a) considered in determining the amount of child support to be paid by the disabled parent, or b) credited against any child support obligation or judgment.

For the reasons hereinafter set out we affirm the trial court's order but alter the trial court's findings.

The evidence adduced at the hearing on Mary's application showed that Roger is a totally disabled quadriplegic. The date of Roger's injury is not shown in the record, but the record indicates that he was injured at the time of the dissolution of the marriage between the parties in 1971 and that at some time between the divorce in 1971 and Roger's application to change

custody of the child in 1979, Roger received a sum of money because of the serious injuries resulting in his present condition. At the time of the hearing Roger was remarried and had two children of that marriage.

Evidence adduced further showed that at the time of the hearing on Mary's application, Roger had capital assets of $205,000, principally invested in stocks and bonds. He also had a home, subject to a mortgage in some amount less than $14,000, and a van and an automobile equipped for him to operate. The evidence showed that Roger received $12,117 gross income from his investments in 1980, $15,759 in 1981, and $5,550 in 1982. Roger also received $989 each month from Social Security benefits, which amount included $252 for the two children living with him. Roger submitted an exhibit predicated on his monthly Social Security benefits plus his investment income (which he estimated at $500 per month) showing he spent approximately $50 more each month than he received. He projected that in 1986 when, the evidence showed, the child of Roger and Mary would complete high school, Roger's capital balance would have been reduced to $187,000.

The evidence also shows that Mary remarried about 4 years after her divorce from Roger and that she had one child of that second marriage. The record indicates that her second marriage ended in divorce and that Mary receives $200 per month as child support for her second child. Mary also receives $126 per month as support for the child of Mary and Roger in Social Security benefits as a result of Roger's physical condition. Mary also has take-home earnings from two jobs as a waitress, and from telephoning work in her home. She also rents a room in her home to a young woman, on the average of 6 months a year. Mary testified she had available funds each month from all sources of $886 and that her monthly expenses were $967.

The trial court's determination that Roger should pay $125 per month child support, in addition to the monthly Social Security benefits of $126 for the minor, was based on the foregoing evidence.

We turn first to the issue of whether Roger had earning capacity within the meaning of § 42-364(3). The trial court found that earning capacity was the only factor it could

consider in determining the amount of child support to be paid. The court also found that while Roger "is not capable of earning a wage," his investments constituted an "earning capacity." The trial court also determined that payments to a child "from a source other than from the parents is not a factor [which the court could] consider under the statute in determining the amount of child support to be paid by a parent." Based on this reasoning, the trial court ordered Roger to pay $125 per month child support. While the court's expressed reasoning is not correct, we determine, for the reasons set out below, that the court reached a correct determination. This court will not reverse a proper result because it was based on incorrect reasoning. *Nerud v. Haybuster Mfg.*, 215 Neb. 604, 340 N.W.2d 369 (1983).

We agree with the trial court that, under the evidence presented at the hearing, Roger is not at this time capable of earning a wage but that he does have earning capacity within the meaning of § 42-364(3). Obviously, different cases may present different facts with regard to the wage-earning capacity of a person disabled as Roger is. The statute in question, however, does not limit child support payments to be paid only from wages. Section 42-364(3) states in part that "[i]n determining the amount of child support to be paid by a parent, the court shall consider the earning capacity of each parent." It has been the law of this state for many years that, as stated in *Brus v. Brus*, 203 Neb. 161, 164-65, 277 N.W.2d 683, 686 (1979), "[i]n determining the amount of child support to be awarded, the status, character, and situation of the parties and attendant circumstances must be considered. The financial position of the husband as well as the estimated costs of support of the children must be taken into account . . . ." That statement should be broadened to include that the circumstances referred to should be consideration of the financial condition of the parent making the child support payments. See, also, *Lockwood v. Lockwood*, 205 Neb. 818, 290 N.W.2d 636 (1980); *Lynch v. Lynch*, 195 Neb. 804, 241 N.W.2d 123 (1976); *Hermance v. Hermance*, 194 Neb. 720, 235 N.W.2d 231 (1975). "Earning capacity" as used in § 42-364(3) means the overall capability of a parent to make child support payments based on

the overall situation of the parent making such payments. That overall situation includes moneys available to the parent from all sources, including investment income. The trial court properly determined the amount of child support by taking into consideration the status, character, and situation of the parties and attendant circumstances, including the financial condition of the party making the payments and estimated costs of support of the children.

With regard to Roger's other two assignments of error, that is, the effect of Social Security benefits on court-ordered child support payments, the same rationale applies. When the court considers the earning capacity of each parent, it must consider the factors set out above. The "situation of the parties" and the "attendant circumstances" of the parties include the admitted fact that Mary is receiving $126 per month for the parties' minor child from Social Security benefits. In the absence of that amount the court may well have ordered higher monthly support payments, or if the benefit payments were higher, the court might well have ordered lower support payments from the father of the child.

Roger urges that the trial court erred in refusing to credit the Social Security payments received by Mary on the child's behalf against his support obligations, and relies on *Schulze v. Jensen*, 191 Neb. 253, 214 N.W.2d 591 (1974). Mary argues that *Schulze* differs from the case at hand. We agree that the *Schulze* case differs from this case.

In *Schulze* the parties were divorced and the father was ordered to pay child support in the amount of $260 per month. Sometime after the divorce decree, the father was disabled in an auto accident. When he fell behind in support payments, his former wife brought an action to recover them. He claimed that he was entitled to a credit of over $8,000 for Social Security payments made to the children on account of his accident. The trial court agreed and we affirmed.

*Schulze*, however, differs from the instant case. In *Schulze* the father was injured after child support amounts had been set by the court. The court there decided that "in the context of this case" the payments were a substitute for the father's support obligation. *Id.* at 257, 214 N.W.2d at 594. Here, Roger was

injured prior to the court's determination of support obligation. The court was fully cognizant of Roger's disability and of the Social Security payments being made on the child's behalf. Knowing this, it ordered support in addition to the benefit payments. In so doing the trial court was considering the overall situation of both parents and the child. The amount of child support ordered in a dissolution of marriage action is initially left to the sound discretion of the trial judge and is reviewed de novo on the record in this court and affirmed in the absence of an abuse of discretion, even though the judge used incorrect reasoning in reaching his determination. The trial court did not abuse discretion. See *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984).

Finally, we turn to the claim on cross-appeal, that the trial court's award of $650 for an attorney fee was clearly inadequate. This claim is without merit. That amount was awarded for a hearing of less than 3 hours, and preparation therefor. The awarding of attorney fees in a hearing on modification of a dissolution decree is a matter within the trial court's initial discretion and, while reviewed de novo in this court, will be affirmed in the absence of an abuse of the trial court's discretion. *Guggenmos v. Guggenmos, supra*. There was no abuse of discretion here.

Appellee is awarded $400 for attorney fees in this court.

AFFIRMED.

SHANAHAN, J., concurs in the result.