GRACE B. AINSLIE, APPELLEE, V. NEILON J. AINSLIE, APPELLANT.

538 N.W.2d 175

Filed September 26, 1995.   No. A–94–216.

Donald R. Witt and John W. Ballew, Jr., of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Virginia G. Johnson for appellee.

SIEVERS, Chief Judge, and IRWIN and MUES, Judges.

MUES, Judge.

Neilon J. Ainslie appeals from a decree entered by the district court for Lancaster County on February 11, 1994. The decree specifically dissolved the marriage between Neilon and his wife, Grace B. Ainslie. The order further divided the parties' property and debts and awarded alimony to Neilon in the sum of $500 for a period of 12 months, $300 for a period of 12 months, and $200 for a period of 12 months. On appeal to this court, Neilon challenges the award of alimony as insufficient in both amount and duration. Although Grace's brief argues that no alimony should have been awarded and, in fact, seeks a reversal of that portion of the decree, she has failed

to present a cross-appeal to this court pursuant to Neb. Ct. R. of Prac. 9D(4) (rev. 1992). Therefore, we view her position as that of merely resisting the increase sought by Neilon.

## FACTS

Neilon and Grace were married for nearly 40 years. Four children were born of the marriage, all of whom had reached the age of majority at the time of trial. The couple moved to Lincoln in approximately 1985. Prior to this time, the couple had moved frequently throughout the course of the marriage.

The dissolution hearing was held December 14, 1993. At that time, Neilon was 65 years old. Neilon receives Social Security payments in the amount of $745 a month and a pension totaling $51 a month. These represent his sole source of income. Prior to moving to Lincoln, Neilon had worked full time in the restaurant management business during the entire course of the marriage except for a short period of time when he underwent a 30-day treatment program for alcoholism. Upon moving to Lincoln, Neilon worked at McDonald's, but quit because it was too strenuous. He subsequently worked part time delivering meals for a retirement center for an undisclosed amount of time. After the parties separated, Neilon worked for 4 months at a fast-food establishment at a Wyoming resort managed by his son. Neilon testified that he found the work difficult, but he continued until the resort closed due to cold weather. The tax documents submitted by the parties indicate the total wage income of the parties in 1991 totaled $732. It is impossible from the record to ascertain which party this wage income is attributable to. Tax records further indicate that neither party earned wages in 1992. Neilon likewise was not employed at the time of trial. Neilon suffers from high blood pressure, for which he takes medication. He also has a high cholesterol level, for which he does not take medication due to its expense. Neilon has undergone two surgeries for arterial sclerosis.

At the time of trial, Grace was approximately 58 years old. Throughout the marriage, she worked at various jobs ranging from store clerk and babysitter to medical records technician. Since moving to Lincoln, she worked as a store clerk during one Christmas season and participated in one Harris Laboratories

study. Grace's health problems include bladder incontinence, high blood pressure, and high cholesterol.

During the marriage, Grace became a beneficiary of two trusts. The first of these, referred to as the Grace B. Ainslie Trust, was created by Grace in 1985 using money inherited from her mother. At its inception, the trust corpus was $200,000. Grace has complete control over this trust with free access to its corpus and the ability to determine the amount of income she will receive. Grace's chosen yearly net income from this trust is approximately $12,588. The remainder of income from this trust has been allowed to accumulate. As of June 30, 1993, the corpus of the Grace B. Ainslie Trust had increased to $280,539.63.

Grace is also the beneficiary of a second trust created by a great–great–uncle, referred to as the Annie W. Dunlap Trust. As of June 30, 1993, this trust had an accumulated value of $4,662,938.07. Grace has an undivided two–fifteenths interest in this trust enabling her to receive a yearly net income of approximately $20,000. Further, Grace will receive an undivided two–fifteenths interest in the principal of this trust upon the death of her aunt. Grace has no control over the distribution regarding this trust. The income from both trusts has been used to purchase miscellaneous items of property and for support of the parties since they moved to Lincoln until the time of separation.

In the decree entered by the trial court, Grace received the marital residence, a vehicle currently in her possession, property in Arkansas, and the personal property in her possession. She was ordered to assume the debt for the real property in the amount of $62,000. Neilon received the vehicle in his possession, a television set, and a money judgment in the amount of $7,000 for his portion of the equity in the marital residence. Neilon was also awarded alimony, which is the subject of this appeal.

## ASSIGNMENT OF ERROR

Neilon's sole assignment of error is that the trial court erred in awarding alimony of insufficient amount and duration.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994); *Pendleton v. Pendleton*, 242 Neb. 675, 496 N.W.2d 499 (1993). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994); *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993).

## ANALYSIS

Neilon claims the district court erred by awarding an insufficient amount of alimony. Grace's counterargument is that any award of alimony in this case is contrary to the criteria set forth in Neb. Rev. Stat. § 42–365 (Reissue 1993). She further asserts that future uncertain income from a nonmarital trust cannot properly be considered for the purpose of awarding alimony.

The court will first consider § 42–365, which sets forth the criteria to consider in awarding alimony and provides, in relevant part:

When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. . . .

. . . The purpose of alimony is to provide for the continued maintenance or support of one party by the

other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

In awarding alimony, a court should consider, in addition to the specific criteria listed in § 42–365, the income and earning capacity of each party as well as the general equities of each situation. *Kelly, supra*; *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986).

The first factor to consider is "the circumstances of the parties." Both Neilon and Grace are at or close to retirement age. For the past 8 years, neither has been employed other than for a short duration on a part–time basis. Since the parties' separation, Neilon has stayed with three of his four children and, at times, was forced to sleep in his vehicle. Beginning December 1, 1993, Neilon was able to rent an apartment with the help of a son who provided the security deposit. Neilon's monthly income is less than $800. Nearly half of this is spent on rent alone. Grace, on the other hand, has a home with the ability to pay its mortgage. She has full access to the Grace B. Ainslie trust, which currently has a principal totaling over $280,000. In addition, she has a net monthly income of over $2,500.

Next, we consider the fact that the parties were married for nearly 40 years. We also consider the "contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities." Grace argues at length in her brief that Neilon contributed nothing to the marriage. However, Grace's assertions of alcoholism, gambling, and self–indulgence by Neilon are wholly unsupported by the record. The only evidence regarding alcoholism by Neilon is that he stopped drinking in approximately 1973 and entered a treatment program in 1976. Further, the only gambling by Neilon substantiated by testimony consists of occasional trips to Las Vegas in which both Neilon and Grace took part and Neilon's participation in poker games with a "30–cent limit, half a dollar on the last card." Aside from two references by Grace in her testimony that her husband gambled, no further evidence regarding Neilon's gambling was adduced at trial. Furthermore,

Grace's assertions that the family was forced to move frequently because Neilon continually lost his job due to his alcoholism is also unsupported by the record. Rather, the record indicates that Neilon was almost continuously employed for over 30 years of the marriage. At his last full-time position, Neilon received a yearly income of over $30,000. Grace admitted that during the marriage Neilon's income, along with hers, was used to pay the family's expenses. Consequently, there is also no evidence from the record to support the conclusion set forth in Grace's brief that the lack of marital assets is the sole result of Neilon's conduct.

The fourth factor to consider is "the ability of the supported party to engage in gainful employment." As previously stated, neither party has worked since coming to Lincoln other than in temporary, part-time positions. Neilon testified that he found work in the fast-food business too strenuous. He was employed, if at all, in 1991 only to the extent of $732. He was not employed in 1992. Neilon is past the age of typical retirement. His ability to acquire gainful employment appears limited to say the least.

In addition to the criteria set forth in § 42-365, the court also considers the income and earning capacity of each party as well as the general equities of each situation. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994); *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986). Grace argues that she has no "earning capacity" from which to order alimony. However, the court considers not only "earning capacity" but also income. Grace's receipt of money from trusts is certainly income to be considered by this court when determining alimony. Moreover, "earning capacity" has been interpreted with regard to child support to mean the overall capability of one to make support payments from all sources. *Lainson v. Lainson*, 219 Neb. 170, 362 N.W.2d 53 (1985). Likewise, earning capacity for the purpose of alimony encompasses more than one's ability to earn a wage and includes income from all sources.

Grace also argues that income from a trust whose corpus consists solely of inherited property should not be considered by the court in determining the appropriateness of alimony to be paid by the beneficiary of such trust. However,

she points us to no legal authority that such absolute limitation exists, and we have found none. Rather, how property inherited by a party during the marriage will be considered in determining division of property or award of alimony must depend upon the facts of the particular case and the equities involved. *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982); *Koubek v. Koubek*, 212 Neb. 2, 321 N.W.2d 55 (1982). The general rule in Nebraska is that property inherited by one spouse is not subject to division unless the other spouse has contributed to improving or caring for that property. *Ross v. Ross*, 219 Neb. 528, 364 N.W.2d 508 (1985); *Van Newkirk, supra*. In this case, Neilon does not claim an interest in the trust property inherited by Grace. However, this general rule in no way suggests that ownership of inherited property and income derived therefrom may not be considered when determining whether alimony is awarded and in what amount. The fact that property is inherited and therefore excluded from division does not prevent the income it generates from being considered when determining alimony. See, e.g., *In re Marriage of Thomas*, 319 N.W.2d 209 (Iowa 1982) (husband's interest in family farm, although inherited and therefore excluded from division, remains a factor with regard to alimony). See, also, *Geddes v. Geddes*, 530 So. 2d 1011 (Fla. App. 1988) (court entitled to consider income from nonmarital trust for purpose of determining alimony when such income was anticipated to be permanent and parties had relied upon said income during marriage).

Although we have found no case where the Nebraska Supreme Court has directly addressed this issue, that court has recognized that property, although otherwise excluded from property division as a marital asset, may still be a consideration when awarding alimony. For example, despite their exclusion from property divisions at one time, pension and retirement incomes were still considered when determining the appropriateness of an alimony award. See, e.g., *Howard v. Howard*, 196 Neb. 351, 242 N.W.2d 884 (1976); *Albrecht v. Albrecht*, 190 Neb. 392, 208 N.W.2d 669 (1973) (of course, pension and retirement plans are now legislatively included as part of the marital estate to be considered in dissolution

proceedings under Neb. Rev. Stat. § 42–366(8) (Reissue 1993)). If Grace had purchased a business with her inherited money and were now drawing $30,000 net annual wages from that business, we believe few would seriously question the appropriateness of considering that money in the alimony equation. Its form as a trust distribution does not logically compel us to ignore it in this case.

■ Furthermore, the ultimate test for determining correctness in the amount of alimony is reasonableness. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994); *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104 (1994). Neilon testified that his "bare bones" monthly expenses total approximately $1,235. His income is now $796 per month. Grace does not challenge Neilon's stated amount of expenses or whether said amount is reasonable. Given the disparity in the parties' current income, the length of the marriage, the fact that Neilon steadfastly contributed to the family income for over 30 years, and his present limited ability to acquire gainful employment, we believe the district court's decision to award alimony was eminently correct.

However, the amount and duration of the alimony are not reasonable. There is nothing in the record to suggest that after the first year, when the $500 per month in alimony drops to $300 per month, or at the end of the second year, when it plummets to $200 per month, Neilon's needs will be less or his other income higher in order to compensate for this decrease in and eventual dissipation of alimony. As the matter now stands, Neilon will no longer receive alimony after December 1996. At that time, he will be 68 years old with a likely monthly income of $796 and monthly expenses of $1,235. Perhaps there is some wisdom in gradually "weaning" an alimony recipient from the security of an annual stipend in some circumstances, but we fail to see its wisdom in this case. If the desired effect is to allow and encourage Neilon to develop skills and financial independence, it hardly seems likely to succeed at this point in his life and health. We conclude that the order to reduce the alimony from $500 after 1 year and to totally eliminate it after 3 years constitutes an abuse of discretion. We believe an award to Neilon of $500 per month alimony payable until the death of

either Grace or Neilon or the remarriage of Neilon is reasonable in this case, subject, of course, to modification pursuant to § 42–365.

## CONCLUSION

The fact that property is inherited does not preclude it from consideration when determining whether and in what amount to award alimony. Accordingly, the district judge correctly awarded alimony in this case. However, the district judge abused his discretion when ordering that the amount be decreased yearly and eventually terminated at the end of 3 years. We therefore affirm the award of alimony, but for the reasons set forth above order alimony to be paid in the amount of $500, to terminate upon the death of either party or upon the remarriage of Neilon.

AFFIRMED AS MODIFIED.