Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/02/2024 09:04 AM CST

Stephanie L. Snow, appellee, v.
Ronald L. Snow, appellant.

___ N.W.2d ___

Filed December 26, 2023.    No. A-22-897.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Divorce: Property Division: Equity.** Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances.

4. **Divorce: Property Division.** In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties.

5. ____: ____. In a marital dissolution action, there is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.

6. ____: ____. Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance.

7. **Divorce: Property Division: Proof.** The burden of proof rests with the party claiming that property is nonmarital.

8. **Divorce: Property Division: Presumptions.** Accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse.

9. **Divorce: Property Division.** The appreciation or income of a nonmarital asset during the marriage is marital insofar as it was caused by the efforts of either spouse or both spouses.

10. \_\_\_\_: \_\_\_\_. The active appreciation rule sets forth the relevant test to determine to what extent marital efforts caused any part of an asset's appreciation or income.

11. **Property Division: Words and Phrases.** Appreciation caused by marital contributions is known as active appreciation, and it constitutes marital property.

12. \_\_\_\_: \_\_\_\_. Passive appreciation is appreciation caused by separate contributions and nonmarital forces.

13. **Divorce: Property Division.** Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.

14. \_\_\_\_: \_\_\_\_. The original value of an asset may be nonmarital, while all or some portion of the appreciation of that asset may be marital.

15. \_\_\_\_: \_\_\_\_. The oft-cited three-step process of a marital property division must account for appreciation, which may be treated separately from the original capital or value of an asset.

16. \_\_\_\_: \_\_\_\_. In a marital dissolution action, the equitable division of property is a three-step process. The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. And the third step is to calculate and divide the net marital estate equitably between the parties.

17. \_\_\_\_: \_\_\_\_. The active appreciation rule applies to agricultural land or farmland.

18. \_\_\_\_: \_\_\_\_. The term "*Grace* award" has been described as a device to fairly and reasonably divide a marital estate where the prime asset in contention is one spouse's gifted or inherited stock or property in a family agriculture organization.

19. **Alimony.** The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in Neb. Rev. Stat. § 42-365 (Reissue 2016) make it appropriate.

20. **Alimony: Appeal and Error.** In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result.

21. **Alimony.** In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness.

22. ____. There are four factors that are relevant to alimony: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party.

23. ____. In determining whether alimony should be awarded, a court should consider the income and earning capacity of each party and the general equities of the situation.

24. ____. Alimony should not be used to equalize the incomes of the parties or punish one of the parties, but disparity in income or potential income may partially justify an award of alimony.

Appeal from the District Court for Adams County: Morgan R. Farquhar, Judge. Affirmed in part, and in part reversed and remanded with directions.

Adam R. Little, of Nebraska Legal Group, for appellant.

Jack W. Besse, of Parker, Grossart & Bahensky, L.L.P., for appellee.

Pirtle, Chief Judge, and Moore and Arterburn, Judges.

Pirtle, Chief Judge.

## I. INTRODUCTION

The district court for Adams County dissolved the marriage of Stephanie L. Snow and Ronald L. Snow and divided the parties' property and debts. On appeal, Ronald challenges the district court's division of property and its award of alimony to Stephanie. Based on the reasons that follow, we affirm in part, and in part reverse and remand with directions.

## II. BACKGROUND

Stephanie and Ronald were married in June 1981. They had two children who are no longer minors and, therefore, are not affected by these proceedings. When the parties married, Ronald was farming with his father, and they raised hogs. The farm ground was owned by Ronald's parents. Stephanie testified that she worked on the farm and worked at the grain elevator during harvest time. Around 1985, Ronald and his father stopped farming. Ronald opened a mechanic shop located in a building on his parents' land and Stephanie helped him in the shop. He had the shop for about 15 to 20 years, but it was never profitable.

Ronald's father had an antique store that he started almost 40 years prior to trial. The antique store was also located in a building on Ronald's parents' property. Stephanie helped with the store by arranging and displaying the antiques, as well as pricing the items. She would also go with Ronald's father to auctions to purchase antiques for the store.

In the late 1980s, Stephanie opened her own business that repaired and restored wicker furniture. This business was also located on Ronald's parents' property.

In the mid-1990s, Stephanie started a residential and commercial cleaning business. At the time of trial, she was still running the cleaning business and it was her only source of income. She was earning $400 to $500 per week.

During the parties' marriage, they lived in a home owned by Ronald's parents and located on 10 acres of their property, referred to as "the cabin."

In December 2006, Ronald's parents titled two parcels of real property in Ronald's name, reserving a life estate for themselves. The first parcel was 176 acres of cropland that was cash-rented by a third party. This parcel included the cabin; the house where Ronald's parents lived; the buildings that housed the mechanic shop, the antique store, and the furniture repair business; and a building where Ronald's father displayed his own antique collection. The second parcel was

57 acres that consisted primarily of pasture ground, which was also rented to a third party. Ronald's mother died in 2016 and his father died in 2019, thereby ending the life estate.

Stephanie filed a complaint for dissolution of marriage in May 2021. Trial was held in September 2022. At the time of the trial, Stephanie was 60 years old and Ronald was 61 years old. Stephanie and Ronald both testified, as well as Michael Paul Wilken, a certified general appraiser.

Stephanie testified that since 2006, she had spent time and effort improving the cabin, as well as Ronald's parents' house. She testified that she installed ponds around the cabin, did landscaping, and remodeled Ronald's parents' bathroom. She also presented photographs indicating that she hand painted a ceiling and tiled the kitchen in the cabin. She also had a washhouse moved into the yard by the cabin and spent time fixing it up and decorating it. Stephanie also testified that after Ronald's father died in 2019, she did other landscaping, including moving large rocks and planting flowers and bushes. She also repainted a fence. She believed that the improvements she made increased the value of the property at the time. She testified, however, that at the time of trial, the area around the cabin was covered in weeds and there was nothing left of the flowers and bushes she planted. Stephanie stated she did not want to be awarded the cabin because it needed too much work.

In January 2022, a broker from an auction and realty company conducted a broker price opinion of the cabin and the 10 acres where it is located. The broker concluded that "[t]his 10-acre parcel would carry as much or more value as a new build site versus evaluating the older house and garage as it is today and the cropland on a per-acre basis." The broker opined that the value of the property at that time was $125,000 to $150,000. Stephanie agreed that the broker indicated that the ground itself was worth more than it was with the house as far as it being used as a new build site.

Stephanie and Ronald agreed that Ronald's father received the cash rent payments from the tenant farming the land until he died. After his father died, Ronald started receiving the cash rent payments, which totaled around $20,000 per year. Ronald testified that he had to pay around $10,000 in taxes each year, so he only received $10,000 in net income per year from cash renting the farm ground. Ronald's other income of $2,200 per year came from renting the pasture ground. He testified that his monthly expenses total $2,859. He stated that he is "getting by," but it is difficult to meet his monthly obligations based on his income. Robert testified that he would not be able to provide any financial support to Stephanie.

Ronald testified that the real property and the two houses located on the property gifted to him by his parents should all be classified as nonmarital property. He also testified that there had not been any substantial improvements made to the property or the houses. He contended that the antique store, the furniture repair business, and the mechanic shop were also nonmarital property. Ronald had no objection to treating Stephanie's cleaning business as nonmarital and awarding it to her. There was also a small piece of land valued at $1,500 that Ronald's father had purchased and gave to both Stephanie and Ronald. Ronald testified that Stephanie could have it.

Wilken testified regarding an appraisal he performed on the two parcels of land Ronald received from his parents. Ronald asked Wilken to complete an appraisal of the total property on two retroactive dates: January 7, 2019, the date Ronald's father died and Ronald gained complete ownership of the property, and May 12, 2021, the date the complaint for dissolution was filed. In addition to the farm and pasture ground on the two parcels, the appraisal included Ronald's parents' former residence, which is where Ronald was living at the time, and the other buildings on the property. It did not include the cabin located on the 176-acre parcel.

Wilken testified that he conducted his appraisal using three different methods of valuation: the sales comparison approach, the cost approach, and the income approach. He explained each method of valuation, and it was also set forth in his report, which was entered into evidence. He then reconciled those values as the most accurate way to value real estate. In utilizing this approach, he valued the real estate (both parcels minus the cabin) on January 7, 2019, at $860,000.

Wilken used the same process for May 12, 2021. His opinion as to the value of the real estate on May 12 was $950,000. Wilken testified that in his professional opinion, the $90,000 in appreciation of value between the two dates was due entirely to external market forces. He stated that he was not given any information regarding any improvements that had been made and that based on his inspection of the property, it did not appear there had been any recent improvements on the property.

Following trial, the court entered a decree dissolving the parties' marriage and dividing their assets and debts. Citing *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986), the trial court found that Stephanie should receive some credit for the value of the real estate, which included the 1-acre tract given to Stephanie and Ronald by Ronald's father and the two parcels gifted to Ronald by his parents. It stated that both personal and business property were comingled between the parties and Ronald's parents for the length of the marriage. The court found that it was "impossible for [it] to unwind the comingling of land, homes, antiques, business assets, personal property, and farm real estate. There is no doubt that [Stephanie] contributed significantly to the various businesses engaged in by her nuclear family and her inlaws." It awarded all real estate to Ronald and found that law and equity supported a finding that the cabin was a marital asset with a value of $163,870. The court concluded that because the cabin could not be partitioned from the remaining real estate, it

awarded an equalization payment to Stephanie by Ronald for half the value of the cabin, or $81,935.

The trial court further found that law and equity demanded an equalization of the other real estate and that a division based upon a percentage of value was appropriate. The court found that 25 percent of the value of the remaining real estate should be paid by Ronald to Stephanie. The court took the value of all the real estate, $946,500, and subtracted the value of the cabin, resulting in $782,630 as the value of the remaining real estate. It then calculated 25 percent of $782,630, which is $195,657.50. The two equalization payments in favor of Stephanie and against Ronald totaled $277,592.50 and were to be paid in 6 months. It also awarded Stephanie spousal support in the amount of $1,000 per month for 120 months, as well as attorney fees in the amount of $5,000.

## III. ASSIGNMENTS OF ERROR

Ronald assigns the trial court erred in (1) making an apparent "*Grace* award," rather than setting aside premarital and nonmarital property; (2) failing to properly classify certain nonmarital assets; (3) including a marital value on nonmarital property, rather than setting it aside; (4) improperly valuing and dividing the marital estate; (5) ordering a "massive" cash equalization payment; and (6) awarding Stephanie alimony.

## IV. STANDARD OF REVIEW

[1,2] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Novotny v. Novotny*, 32 Neb. App. 142, 995 N.W.2d 64 (2023). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.* A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## V. ANALYSIS

### 1. Relevant Law Regarding Division of Marital Estate

[3-5] Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023). In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties. *Id.* There is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Id.*

[6,7] Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Novotny v. Novotny, supra.* Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. *Id.* The burden of proof rests with the party claiming that property is nonmarital. *Id.*

[8] In *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017), the Nebraska Supreme Court held that accrued investment earnings or appreciation of nonmarital assets during the marriage are presumed marital unless the party seeking the classification of the growth as nonmarital proves: (1) The growth is readily identifiable and traceable to the nonmarital portion of the account and (2) the growth is not due to the active efforts of either spouse.

[9] Prior to the decision in *Stephens*, the Nebraska appellate courts treated separate property as remaining nonmarital unless both spouses contributed to the improvement or operation of the property or the spouse not owning the property, or not receiving the inheritance or gift, significantly cared for the property during the marriage. See *Parde v. Parde, supra.* But in *Stephens*, the court held that the appreciation or income of a nonmarital asset during the marriage is marital

insofar as it was caused by the efforts of either spouse or both spouses. See *Parde v. Parde, supra.*

[10-12] The active appreciation rule sets forth the relevant test to determine to what extent marital efforts caused any part of an asset's appreciation or income. *Id.* Appreciation caused by marital contributions is known as active appreciation, and it constitutes marital property. *Id.* Passive appreciation is appreciation caused by separate contributions and nonmarital forces. *Id.*

[13,14] After *Stephens*, appellate courts have adhered to the framework that any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. See *Parde v. Parde, supra.* The original value of an asset may be nonmarital, while all or some portion of the appreciation of that asset may be marital. *Id.*

[15,16] The oft-cited three-step process of a marital property division must account for appreciation, which may be treated separately from the original capital or value of an asset. *Id.* Thus, in a marital dissolution action, the equitable division of property is a three-step process. The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. And the third step is to calculate and divide the net marital estate equitably between the parties. *Id.*

[17] In *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023), the court determined that the active appreciation rule applied to agricultural land or farmland.

## 2. Equitable Lump-Sum Awards

In the present case, Ronald was gifted two parcels of land from his parents. One parcel was 176 acres of primarily cropland, but it also contained the cabin, the house where

Ronald's parents lived, and the buildings that housed the mechanic shop, antique store, wicker repair business, and Ronald's father's antique collection. The other parcel was 57 acres of pasture ground.

In evaluating the marital estate, the trial court treated the cabin separately from the rest of the property and buildings. It determined that the cabin was a marital asset and awarded Stephanie 50 percent of the value of the cabin. The court also awarded Stephanie 25 percent of the value of the remaining real estate.

[18] Ronald argues that the trial court erred in its division of property because it gave Stephanie an equitable lump-sum award or a "*Grace* award." A "*Grace* award" became a common term of art in dissolution cases, particularly involving farms and ranches, and derived from the Supreme Court's opinion in *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986). A *Grace* award has been described as a device to fairly and reasonably divide a marital estate where the prime asset in contention is one spouse's gifted or inherited stock or property in a family agriculture organization. See *Charron v. Charron*, 16 Neb. App. 724, 751 N.W.2d 645 (2008). The Supreme Court expressly abrogated *Grace v. Grace, supra*, and its related line of cases in *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017).

The *Stephens* court explained that it found inapplicable to the modern dual classification system any statements in prior cases that failed to recognize as a marital asset appreciation through the active efforts of the owning spouse. It further stated that for purposes of the active appreciation rule, there was no reason to treat appreciation of a nonmarital asset differently from income derived from a nonmarital asset during the marriage. It concluded that the principles set forth in *Grace v. Grace, supra*, were no longer applicable under the dual classification system.

We conclude that the trial court abused its discretion in awarding Stephanie an equitable lump sum, or *Grace* award,

rather than setting aside nonmarital property and applying the active appreciation rule. Ronald argues that under the proper analysis, he met his burden to show that the real property gifted to him was nonmarital and that any growth or appreciation was passive and, therefore, nonmarital. We agree.

The evidence showed that the property at issue was gifted to Ronald by his parents. In 2006, Ronald's parents transferred title to two parcels of land to Ronald but maintained a life estate so they could continue to live on the property and receive the cash rent from the tenants farming the land and using the pastures. Stephanie testified that when the land was deeded to Ronald, she understood that it was a gift made specifically to him. Accordingly, the evidence is undisputed that the property was gifted to Ronald by his parents, making it nonmarital property that should be set aside to Ronald.

We must next determine whether any appreciation of the property after it was gifted to Ronald was active or passive and, therefore, whether the appreciation was marital or nonmarital.

Ronald presented evidence from a certified general appraiser regarding the appraised value of the property on two different dates: January 7, 2019, the day Ronald fully inherited the property, and May 12, 2021, the day the complaint for dissolution was filed and the parties separated. Wilken valued the property at $860,000 as of January 7, 2019, and $950,000 as of May 12, 2021. Wilken testified that in his professional opinion, the $90,000 in appreciation of value between the two dates was due entirely to external market forces. We conclude that Ronald met his burden of proof to show that the appreciation in value of the nonmarital real property was entirely passive.

It then became Stephanie's burden to rebut Ronald's evidence that the appreciation of his nonmarital real property was passive. She failed to do so. Stephanie did not present evidence to rebut Ronald's appraised value of the property on either date. She presented limited evidence of improvements

she made over time and argued they increased the value, but the improvements were primarily made inside and around the cabin and do not meet the definition of active marital appreciation. Further, Wilken's appraisal did not include the cabin.

Stephanie also argues that in determining the appreciation in value of the property, it should be assessed as of December 12, 2006, the day the property was deeded to Ronald, rather than January 7, 2019, when his father died. She contends that while Ronald's father's death ended the life estate, Ronald was given an interest in the property on December 12, 2006.

Although Ronald's name was put on the title in 2006 and he received an interest in the property at this time, he did not inherit or receive the ground free and clear until 2019, when his father died. Before his parents died, they maintained a life estate on the property, including full rights to occupy the property and rights to receive income from the property. Further, Ronald did not pay inheritance tax on the property until 2019, after his father's death.

In addition, there is no evidence that any appreciation in the property between 2006 and 2019 was caused by the active efforts of either spouse. Ronald and his father stopped farming in 1985. After that, the farm ground was rented by a third party. The pasture ground was also rented by a third party. There was no evidence that any of the businesses that were operated on the property contributed to any appreciation in the property. As a result, any appreciation in value to the property between 2006 and 2019 was passive.

We conclude that the district court erred in awarding Stephanie a *Grace* award, specifically, an equitable lump-sum award equal to 25 percent of value of the real estate. While we recognize that application of the active appreciation rule to the facts of this case produces what could be viewed as an inequitable division of property, particularly given the length of time Stephanie lived on the property, the pertinent case law does not provide for any exceptions to the rule's application. Here, the evidence is clear that the appreciation in value was

due to external market forces and not to any significant efforts by either party. The real estate consisting of the two parcels Ronald was gifted by his parents and its passive appreciation should have been set off to Ronald as nonmarital property and not included in the marital estate. We reverse that portion of the court's decree awarding Stephanie $195,657.50 and remand the matter to the district court for a division of the marital estate, setting off the two parcels of real estate and its appreciation to Ronald as nonmarital property.

### 3. CLASSIFICATION OF CERTAIN ASSETS

Ronald next assigns that the trial court abused its discretion by failing to properly classify certain assets as nonmarital assets.

### (a) Inherited Real Property

Ronald first argues that the trial court erred in failing to classify and set aside the real property he was gifted as his nonmarital property. As set forth above, Ronald proved, and Stephanie did not dispute, that Ronald's parents gifted the property at issue to Ronald. The property should have been classified as nonmarital property.

### (b) The Cabin

The trial court found the cabin was a marital asset with a value of $163,870 and awarded Stephanie an equalization payment equal to half the value of the cabin, or $81,935. The court's value of the cabin was based on its insured value as of June 2022. Ronald argues that the cabin was part of the total real property he was gifted and should not have been treated separately or classified as a marital asset. We agree.

The cabin is located on the property Ronald was gifted and, therefore, is part of the nonmarital property. Although the parties lived in the cabin for most of their marriage, it was owned by Ronald's parents until it was gifted with the property to Ronald. There was no mortgage on the cabin and no evidence that the parties paid any rent. We conclude that the trial court

erred in classifying the cabin as a marital asset and awarding Stephanie an equalization payment equal to one-half of the value. Upon remand, the trial court is to treat the cabin as part of Ronald's nonmarital property.

### (c) Miscellaneous Assets

Ronald next argues that other various assets were classified as marital when they should have been classified as nonmarital. The district court attached a "Settlement Statement" to the decree, which is a spreadsheet detailing how it valued and awarded the parties' assets and debts. Ronald points out several items that he claims were undisputedly nonmarital, yet the court listed them on the spreadsheet and awarded them to Ronald.

The court's spreadsheet states a value for each asset or debt and which party is to receive each item. It does not indicate whether the court found that all the items listed on the spreadsheet are marital or whether some of the items awarded to Ronald were nonmarital. Further, although the spreadsheet assigns values to the assets and debts, it does not calculate the division of the marital estate. In other words, it does not contain a balance sheet showing the total value of marital assets and debts each party was awarded, or a division of the net marital estate.

Upon remand, the district court is ordered to use the three-step process set forth above to classify the parties' property as marital or nonmarital, setting aside Ronald's nonmarital real property and appreciation; to produce a balance sheet valuing the marital assets and liabilities; and to calculate and divide the net marital estate equitably. See *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023).

### 4. VALUATION AND DIVISION OF MARITAL ESTATE

Ronald next assigns that the trial court abused its discretion in valuing and dividing the marital estate. He argues that the court "incons[iste]ntly or arbitrarily valued several items

of marital property." Brief for appellant at 26. He suggests that the court adopted Stephanie's inflated valuations only on property that was awarded to Ronald, despite Ronald's testifying he did not want such property at Stephanie's values. In contrast, when awarding property to Stephanie, the court often gave her the benefit. This argument is also based on the court's "Settlement Statement" attached to the decree, as discussed above. As stated above, upon remand, the district court is to produce a balance sheet dividing the parties' assets and debts and calculating any equalization payment needed.

### 5. EQUALIZATION PAYMENT

Ronald assigns that ordering him to pay an equalization payment of $277,592.50 was an abuse of discretion because he lacks sufficient cash or liquid assets to make the equalization payment. Because the trial court abused its discretion in the method used to divide the marital estate and we are remanding the matter to the trial court, we need not address this assignment of error.

### 6. ALIMONY

Ronald also assigns that the trial court erred in awarding Stephanie alimony. He argues that the alimony award of $1,000 per month for 120 months is "untenable and deprives [him] of a substantial right" because there was no evidence demonstrating Stephanie had a need for support. Brief for appellant at 29.

[19,20] The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in § 42-365 make it appropriate. See *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019). In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Id.*

[21-24] In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. See *id*. There are four factors that are relevant to alimony: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022). In addition, a court should consider the income and earning capacity of each party and the general equities of the situation. See *id*. Alimony should not be used to equalize the incomes of the parties or punish one of the parties, but disparity in income or potential income may partially justify an award of alimony. See *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004).

In considering the four factors set forth above, Ronald was 61 years old at the time of trial and Stephanie was 60 years old. The parties had been married for 41 years. Ronald earns his income by renting the farm ground and pasture ground that he inherited from his parents. Although he presented evidence to show that he struggles "to meet [his] monthly obligations," he does not work and there was nothing to indicate he cannot work. During the marriage, there were three businesses operated on his inherited land, but at the time of trial, he was not operating any of these businesses.

During the marriage, Stephanie worked on the farm and at the grain elevator during harvest time, helped Ronald's father operate the antique store, and ran the wicker furniture repair business. At the time of trial, Stephanie had her own cleaning business. She testified that she was able to pay her expenses with her current income but struggled at times. She did not produce evidence that she needed to or would pursue further education to improve her employment prospects, nor did she produce evidence that her income was lower due to career interruptions during the marriage.

Based on the totality of the evidence before us, the trial court did not abuse its discretion in awarding Stephanie alimony. This assignment of error fails.

## VI. CONCLUSION

We conclude that the trial court abused its discretion in its division of the marital estate. We remand the matter to the trial court to recalculate and divide the marital estate consistent with this opinion. The court's award of alimony to Stephanie is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.